**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Merle Lyle CHAUSSEE, Defendant-Appellant.***

Nos. 75–1718, 75–1973.

United States Court of Appeals, Seventh Circuit.

Argued June 2, 1976.

Decided Sept. 15, 1976.

---

* *Editor's Note:* The Opinion of the U.S. Court of Appeals, Fifth Circuit, in *United States v. Cravero,* published in the advance sheets at this citation (536 F.2d 637), was withdrawn from the bound volume by order of the court.

James E. Dull, Mt. Vernon, Ill., for defendant-appellant.

Henry A. Schwarz, U. S. Atty., Walter E. Schroeder, Asst. U. S. Atty., Belleville, Ill., for plaintiff-appellee.

Before TONE and WOOD, Circuit Judges, and GRANT, Senior District Judge.*

HARLINGTON WOOD, Jr., Circuit Judge.

Appellant Merle Lyle Chaussee, hereinafter referred to as the defendant, was convicted of the crime of aggravated battery on a government reservation in violation of 18 U.S.C. §§ 7 and 13, the Assimilative Crimes Act, and Illinois Revised Statutes, Chapter 38, § 12–4. Defendant asserts on appeal that: 1) a mistrial should have been declared by the trial court; 2) the results of a mental examination conducted pursuant to 18 U.S.C. § 4244, should have been disclosed to him; 3) that he received ineffective assistance of counsel; and 4) the sentence imposed by the trial court was incorrect and excessive.[1]

### 1. Mistrial Issue

The facts are not in dispute. On the morning of the second day of his two day trial, the defendant, just before court opened but in the presence of the jury, attempted to escape from the courtroom. The defendant jumped from his seat at counsel table and bolted through the courtroom door into the hall where he was captured by Marshals and returned. At the time of his attempted escape one of the jurors was heard to utter the word "guilty." The trial judge who had not yet entered the courtroom, upon being advised of this occurrence conducted a hearing outside the presence of the jury to determine what had happened. The defendant moved for a mistrial on the grounds that since the jury had witnessed the event, the defendant could not thereafter receive a fair trial. This motion was denied, the trial judge indicating that he would not allow a defendant by a "bootstrap operation" to bring a halt to his trial by his own misconduct. The jury was then brought back into court and admonished by the trial judge to disregard

---

* Senior District Robert A. Grant of the Northern District of Indiana is sitting by designation.

1. Appeal of the question whether a mistrial should have been granted and the appellant's *pro se* appeal contesting the competency of counsel were docketed under 75–1718. Appellant's *pro se* appeal of the issues relating to excessive sentence and discovery of the 18 U.S.C. § 4244 report were docketed under 75–1973.

those actions by the defendant which the jurors had just witnessed:

> . . . Now ladies and gentlemen, I want to admonish you to not take into consideration any actions of this defendant other than of course, what has transpired here on the witness stand, but any actions of this defendant other than on the witness stand should not be taken into consideration by you the jury in determining the guilt or innocence of this defendant on this trial. . . . (Tr. 110)

Defendant asserts that the denial of his motion for a mistrial deprived him of his right to a fair trial by an impartial jury in violation of the Sixth and Fourteenth Amendments to the Constitution of the United States. Defendant argues that the court's instruction to the jury was not adequate and that in view of one juror's prejudicial utterance the court should have made inquiry to determine the existence of any prejudice among the jurors.

The Government defends the denial of a motion for a mistrial on the policy basis that a defendant by his own intentional misconduct should not be permitted to prevent the completion of his trial. The

Government also contends that the one juror's utterance did not necessarily indicate that the juror had thereby reached a verdict without regard to the evidence and in disregard of the court's instructions, given both immediately after the occurrence, as already noted, and at the close of all the evidence.[2]

The judge fully informed himself as to what had occurred, assessed its impact on the jury and promptly admonished the jury to disregard the defendant's misconduct. Again at the conclusion of all the evidence the judge fully instructed the jury that it was their sworn obligation not to base a verdict of guilty upon anything other than the evidence. There is no reason to assume or speculate that the court's instructions relating to defendant's trial conduct were not efficacious. *United States v. Marshall,* 458 F.2d 446 (2d Cir. 1972).

■ The evidence that the defendant had stabbed another inmate of the United States Penitentiary at Marion, Illinois, without provocation was overwhelming, yet the jury deliberated for approximately five hours before returning its verdict of guilty. It cannot be said the jury did not conscien-

---

2. The court instructed the jury in part at the close of evidence as follows:

> Now, you are to perform your duties as jurors and are not to be governed by bias or prejudice as to any party. The law does not permit jurors to be governed by sympathy, prejudice or public opinion. Both the defendant and the public expect that you will carefully and impartially consider all the evidence presented in the case. Follow all the law that I stated to you in these instructions and reach a just verdict. (Tr. 127)
>
> \* \* \* \* \* \*
>
> Evidence of a defendant's previous conviction of a felony is to be considered by you the jury, only insofar as it may affect the defendant's credibility as a witness, and must never be considered as evidence of guilt of the crime for which the defendant is on trial. (Tr. 128–29)
>
> \* \* \* \* \* \*
>
> Unless you are otherwise instructed, the evidence in the case always consists of the sworn testimony of the witness regardless of who may have called them: And all exhibits received in evidence, regardless of [sic] may

have produced them: And all facts and events which may have been judicially noticed. (Tr. 129)

> \* \* \* \* \* \*
>
> The law presumes a defendant to be innocent of crime. Thus a defendant, although accused, begins the trial with a "clean slate"——with no evidence against him. And the law permits nothing but legal evidence presented before the jury to be considered in support of any charge against the accused. So the presumption of innocence requires that the defendant be acquitted unless the jurors are satisfied beyond a reasonable doubt of the defendant's guilt, after careful and impartial consideration of all the evidence in the case. (Tr. 132)
>
> \* \* \* \* \* \*
>
> Keep constantly in mind that it would be a violation of your sworn duty to base a verdict of guilty upon anything other than the evidence in the case. And remember as well that the law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence. (Tr. 134)

tiously consider the evidence in the light of the court's instructions.

■ The defendant now contends that the judge should have made inquiry of the members of the jury in an effort to determine specifically whether or not any prejudice resulted from the defendant's attempted escape. Under some circumstances such a procedure may be advisable, but defendant made no such request at the time.

Prior to this attempted escape during the course of the trial the defendant interrupted the proceedings by addressing abusive comments at a testifying witness. The court excused the jury and advised the defendant:

> Mr. Chaussee, I don't know how to say this to you other than the fact that it's your trial and I want to give you a fair trial, sir. And I hope you will act accordingly. (Tr. 19)

■ Thus, the defendant was admonished by the court about the possible effects his conduct might have upon his trial. Later he made his effort to escape. The fault lies with the defendant, not with the court or the jury. To allow a defendant by his own misconduct to terminate his trial even temporarily would be to allow him to profit from his own wrong.

In his concurring opinion in *Illinois v. Allen,* 397 U.S. 337, 349, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1969), Mr. Justice Brennan quotes with approval *Falk v. United States,* 15 App.D.C. 446 (1899), a case in which the defendant was more successful in fleeing than Mr. Chaussee:

> "It does not seem to us to be consonant with the dictates of common sense that an accused person . . . should be at liberty, whenever he pleased, . . . to break up a trial already commenced. The practical result of such a proposition, if allowed to be law, would be to prevent any trial whatever until the accused person himself should be pleased to permit it. . . . This would be a travesty of justice which could not be tolerated . . . . [W]e do not think that any rule of law or constitutional principle leads us to any conclusion that would be so disastrous as well to the administration of justice as to the true interests of civil liberty."

■ Even though it may be a defendant's own misconduct which jeopardizes the fairness of his trial, the trial court, however, remains under a burden to use all reasonable means under the circumstances to insure a fair trial. That responsibility will require responses from the court tailored to the peculiar circumstances.

■ Under the circumstances of this case the judge's precautions were adequate. A motion for a mistrial is addressed to the sound and broad discretion of the trial judge. *Illinois v. Somerville,* 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1972). There was no abuse of the court's discretion in denying the motion for mistrial.

*2. Results of Mental Examination*

■ On written request by the United States Attorney the trial judge, prior to trial, ordered a mental examination of the defendant pursuant to 18 U.S.C. § 4244.[3]

---

**3.** 18 U.S.C. § 4244 provides:

*§ 4244. Mental incompetency after arrest and before trial*

Whenever after arrest and prior to the imposition of sentence or prior to the expiration of any period of probation the United States Attorney has reasonable cause to believe that a person charged with an offense against the United States may be presently insane or otherwise so mentally incompetent as to be unable to understand the proceedings against him *or properly to assist in his own defense,* he shall file a motion for a judicial determination of such mental competency of the accused, setting forth the ground for such belief with the trial court in which proceedings are pending. Upon such a motion or upon a similar motion in behalf of the accused, or upon its own motion, the court shall cause the accused, whether or not previously admitted to bail, to be examined as to his mental condition by at least one qualified psychiatrist, who shall report to the court. For the *purpose of the examination the court may*

The results of this examination were not made available to the defendant, and the case proceeded to trial. In a post-trial motion the defendant sought a copy of the results of the examination, and the motion was denied.

The purpose of a psychiatric examination under 18 U.S.C. § 4244 is to determine whether a defendant is competent to stand trial. *United States v. Maret,* 433 F.2d 1064 (8th Cir. 1970), *cert. denied,* 402 U.S. 989, 91 S.Ct. 1678, 29 L.Ed.2d 155. There is no provision in § 4244 requiring the court to make the examination results available to the defendant unless the report indicates a present state of insanity or mental incompetency. In such event a hearing is held on the issue at which evidence may be submitted including that of the reporting psychiatrist. Other courts have declined to make the reports available. *United States v. Everett,* 146 F.Supp. 54 (D.Kan.1956); *United States v. Bell,* 57 F.R.D. 31 (E.D. Tenn.1972).

Similarly, Fed.R.Crim.P. 16(a)(1)(D), does not provide a basis for disclosing the results of a § 4244 examination of an accused. Rule 16(a)(1)(D) provides for the discovery of the results or reports of physical and mental examinations "within the possession, custody or control of the government." [4] The report from a § 4244 examination is within the control of the court, not the government.

No abuse in discretion can be found in the trial court's ruling.

### 3. *Alleged Ineffective Assistance of Counsel*

The defendant filed a *pro se* Motion for a New Trial alleging ineffective assistance of counsel both before and during trial. This motion was denied by the trial court, and this court subsequently granted appellant's *pro se* Motion to File a Brief Instanter on that issue. Thereafter appellant's attorney filed a motion to withdraw as counsel upon the grounds that he could not effectively present that issue on appeal since he was the attorney who was subject to the defendant's complaint. This court denied counsel's motion and provided that the incompetency issue would be considered on the briefs without oral argument.

Appellant specifically alleges that counsel failed to request discovery of the § 4244 mental examination results; failed to assert an insanity defense; and failed to move for an adequate continuance to allow for the preparation of the insanity defense.

■ Nothing in this record suggests any lack of experience or ability of trial counsel

order the accused committed for such reasonable period as the court may determine to a suitable hospital or other facility to be designated by the court. If the report of the psychiatrist indicates a state of present insanity or such mental incompetency in the accused, the court shall hold a hearing, upon due notice, at which evidence as to the mental condition of the accused may be submitted, including that of the reporting psychiatrist, and make a finding with respect thereto. No statement made by the accused in the course of any examination into his sanity or mental competency provided for by this section, whether the examination shall be with or without the consent of the accused, shall be admitted in evidence against the accused on the issue of guilt in any criminal proceeding. A finding by the judge that the accused is mentally competent to stand trial shall in no way prejudice the accused in a plea of insanity as a defense to the crime charged; such finding shall not be introduced in evi-

dence on that issue nor otherwise be brought to the notice of the jury.

4. Rule 16(a)(1)(D) provides:
   (a) Disclosure of Evidence by the Government.
   (1) Information Subject to Disclosure.
   \* \* \* \* \* \*
   (D) *Reports of Examinations and Tests.* Upon request of a defendant the government shall permit the defendant to inspect and copy or photograph any results of reports of physical or mental examinations, and of scientific tests or experiments or copies thereof, which are within the possession, custody or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the government, and which are material to the preparation of the defense or are intended for use by the government as evidence in chief at the trial.

to adequately represent this defendant. Nothing in this record indicates that counsel failed to meet "a minimum standard of professional representation." *United States ex rel. Williams v. Twomey,* 510 F.2d 634, 641 (7th Cir. 1975), *cert. denied sub nom. Sielaff v. Williams,* 423 U.S. 876, 96 S.Ct. 148, 46 L.Ed.2d 109. The trial court was in a first-hand position to judge the competence of counsel and found no merit to defendant's allegation. In defense counsel's appearance before this court on this appeal there was no incompetency apparent.

Defense counsel's failure to secure the results of the § 4244 mental report is no basis for complaint as defendant was not entitled to the report. No reason has been suggested why this court should attempt to pass upon the trial judgment or tactics of counsel. A losing defendant is often prone to unjustifiably blame his counsel. There is no merit in the allegation.

### 4. *Improper or Excessive Sentence*

■ The defendant was charged with intentionally using a deadly weapon, a knife, in committing a battery upon another, causing him bodily harm, upon premises in the exclusive jurisdiction of the United States in violation of Illinois Revised Statutes, Ch. 38, § 12–4,[5] and 18 U.S.C. §§ 7 and 13. This charge makes use of the Assimilated Crimes Act[6] whereby a state criminal statute may be enforced by the United States in areas where it has exclusive jurisdiction provided the crime charged is not also punishable by any enactment of Congress.

After the verdict of guilty the defendant was sentenced by the court to the custody of the Attorney General for a term of seven years to run consecutively with a prior sentence of 22 years which the defendant was presently serving for bank robbery. The term provided in the state act under which defendant was sentenced is imprisonment of from one to ten years.

The defendant filed a post-trial motion for correction of excessive sentence on the basis that he should have been sentenced under 18 U.S.C. § 113(c)[7] which makes assault with a dangerous weapon with intent to do bodily harm without just cause a federal crime with maximum imprisonment of five years.

---

**5.** Illinois Revised Statutes, ch. 38, § 12–4 (1975) provides in part:

§ 12–4. *Aggravated Battery*

(a) A person who, in committing a battery, intentionally or knowingly causes great bodily harm, or permanent disability or disfigurement commits aggravated battery and shall be imprisoned in a penal institution other than the penitentiary not to exceed one year or in the penitentiary from one to 10 years.

**6.** 18 U.S.C. § 13 provides:

§ 13. *Laws of states adopted for areas within federal jurisdiction*

Whoever within or upon any of the places now existing or hereafter reserved or acquired as provided in section 7 of this title, is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable *if committed* or omitted within the jurisdiction of the State, Territory, Possession or District in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment.

**7.** 18 U.S.C. § 113 provides:

§ 113. *Assaults within maritime and territorial jurisdiction*

Whoever, within the special maritime and territorial jurisdiction of the United States, is guilty of an assault shall be punished as follows:

(a) Assault with intent to commit murder or rape, by imprisonment for not more than twenty years.

(b) Assault with intent to commit any felony, except murder or rape, by fine of not more than $3,000 or imprisonment for not more than ten years, or both.

(c) Assault with a dangerous weapon, with intent to do bodily harm, and without just cause or excuse, by fine of not more than $1,000 or imprisonment for not more than five years, or both.

(d) Assault by striking, beating, or wounding, by fine of not more than $500 or imprisonment for not more than six months, or both.

(e) Simple assault, by fine of not more than $300 or imprisonment for not more than three months, or both.

The trial court denied defendant's motion on the basis that the federal and state statutes do not prohibit the same conduct, and therefore the defendant was not entitled to be sentenced under the lesser penalty provisions of the federal statute.[8] It is clear that "[t]he purpose of the Assimilative Crimes Act, . . . is to supplement the Criminal Code of the United States by adopting state criminal statutes relating to acts or omissions committed within areas over which the federal government has exclusive jurisdiction and which are 'not made punishable by any enactment of Congress.' The Act has no application if such acts or omissions are made penal by federal statutes." *United States v. Patmore,* 475 F.2d 752, 753 (10th Cir. 1973).

It is appellant's position that although the federal and state statutes are worded somewhat differently both statutes cover the same type of crime, and thus only the federal statute with its lower penalty provision is applicable.

Given the classic distinctions between an assault and a battery there is an understandable basis to the trial court's ruling. That view finds support in *Fields v. United States,* 438 F.2d 205 (2d Cir. 1971), but a contrary interpretation of the Assimilative Crimes Act has been expressed by this Circuit in *United States v. Anderson,* 425 F.2d 330 (7th Cir. 1970). In the latter case the defendant was convicted under 18 U.S.C. § 113(c), assault with a dangerous weapon, a car. The defendant, relying on the distinction in Illinois law between an assault and a battery, contended that assault did not include touching and that therefore he should have been tried under § 113(d), since the evidence in his case showed contact.

This court rejected that argument and ruled that an assault as used in the federal statute includes acts which would constitute batteries under state law:

Defendant argues that "assault" does not include any touching, that counsel conducted his defense against a charge of assault and not of battery and that defendant has thus been seriously prejudiced by use of the wrong section of the statute in the charge. Defendant here, of course, is relying on a distinction which is drawn from Illinois law. The wording of § 113 however shows that "assault" in the federal Act is a more inclusive term. The section to which defendant draws our attention, § 113(d), speaks of "assault" by striking or wounding. Thus in *Forsberg v. United States,* 9 Cir., 1965, 351 F.2d 242, *cert. den.* 383 U.S. 950, 86 S.Ct. 1209, 16 L.Ed.2d 212, the defendant was charged and convicted of assault with a dangerous weapon with intent to do bodily harm in violation of Title 18 U.S.C. § 113(c) where the victim had been stabbed. . . . 425 F.2d 333.

An examination of all the subparagraphs of § 113 reveals that Congress used the term "assault" to include striking, beating and wounding which otherwise would be considered batteries as distinguished from simple "assault" defined in subparagraph (e). See also *Williams v. United States,* 327 U.S. 711, 66 S.Ct. 778, 90 L.Ed. 962 (1946); *United States v. Big Crow,* 523 F.2d 955, 958 (8th Cir. 1975), *cert. denied,* 424 U.S. 920, 96 S.Ct. 1126, 47 L.Ed.2d 327.

Upon reexamination of this issue no reason is seen to change the interpretation of the Assimilative Crimes Act in this circuit.

"Where the government wrongfully secures a conviction under a state statute

---

8. The district court stated in relevant part:

Defendant's Motion is without merit because Chapter 38, Section 12–4, of Illinois Revised Statutes and 18 U.S.C. § 113(c) cover different offenses. Section 113(c) prohibits "assault with a dangerous weapon, with intent to do bodily harm." The occurrence of a battery is not an essential element of the crime, *Shaffer v. U. S.,* 308 F.2d 654 (5th Cir. 1962). Section 12–4 of Chapter 38, however, requires not only a battery but also the infliction of serious physical injury before the statute is violated. Since the two statutes do not prohibit the same conduct, defendant is not entitled to be sentenced pursuant to the lesser penalty provisions of the federal statute.

pursuant to the Assimilative Crimes Act, rather than under the relevant federal statute, the appropriate remedy is not a reversal of the conviction, but rather a vacating of the sentence and a remand to the district court for resentencing." *United States v. Word,* 519 F.2d 612, 618 (8th Cir. 1975).

Accordingly, the conviction is affirmed, the sentence is vacated and the case is remanded to the district court for resentencing under 18 U.S.C. § 113(c).