UNITED STATES of America,
Plaintiff–Appellee,

v.

Paul FAZZINI, Defendant–Appellant.

Nos. 87–1712, 88–1984.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 3, 1989.

Decided March 23, 1989.

Rehearing and Rehearing En Banc
Denied June 13, 1989.

Alan M. Freedman, Chicago, Ill., for defendant-appellant.

Kristina M.L. Anderson, Asst. U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before CUMMINGS, POSNER, and FLAUM, Circuit Judges.

FLAUM, Circuit Judge.

Defendant Paul Fazzini was indicted by a grand jury on three counts of bank robbery in violation of 18 U.S.C. §§ 2113(a) and (d), and three counts of carrying a firearm during those robberies in violation of 18 U.S.C. § 924(c)(1). A jury found the defendant guilty on all counts and the district judge sentenced him to 25–year concurrent terms on two of the bank robberies, a suspended sentence and five year term of probation on the third bank robbery, and a total of 25 years on the firearm counts, to run consecutively to the sentence on the robberies. Although he raises a host of issues on appeal,[1] the defendant's principal

---

1. Both the defendant and his appointed appellate counsel filed briefs with the court. Together, they presented the following issues which we find to lack merit: (1) whether the government engaged in misconduct in preparing for and carrying out the prosecution; (2) whether the trial judge should have recused herself based on personal bias; (3) whether the government failed to disclose exculpatory evidence to the defense as required by Brady v. Maryland; (4) whether the indictment charged the defendant with multiplicitous crimes; (5) whether the defendant's rights under the Speedy Trial Act were violated; (6) whether the district court erred in denying the defendant's Motion to Suppress; (7) whether the evidence was sufficient to convict the defendant; (8) whether the jury instructions deprived the jury of its right to decide the facts of the case; and (9) whether the district judge abused her discretion by refusing to grant the defendant a continuance.

claims are that the district judge (1) abused her discretion by refusing to permit the defendant, an indigent, to retain an independent psychiatric expert at government expense and in excluding at trial evidence of the defendant's mental condition, and (2) erred in refusing to appoint counsel to assist the defendant at his sentencing hearing. We cannot find that the district judge abused her discretion in either the decision to deny the defendant the services of an independent psychiatric expert at government expense or in the decision to exclude the evidence of the defendant's mental condition. We also find that the district judge did not err in refusing to appoint counsel to assist the defendant at his sentencing hearing. Thus, we affirm the judgment and sentence of the district court.

## I.

The defendant contends that the district judge abused her discretion by refusing to permit him to retain an independent psychiatric expert at government expense. The right to the assistance of an independent psychiatric expert is safeguarded, at least in federal prosecutions, by two separate provisions. First, the due process clause guarantees indigent defendants the aid of government-paid psychiatric assistance. *Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct. 1087, 1091, 84 L.Ed.2d 53 (1985). Second, 18 U.S.C. § 3006A(e) permits an indigent defendant to request the aid of government-supported independent experts.

The statute, and the Court's decision in *Ake,* recognize that independent expertise is often necessary in the subtle and complicated area of mental health. The independent psychiatric expert performs three functions which may be crucial in cases where mental health is a substantial issue. First, the expert can aid a defendant in determining whether a defense based on mental condition is warranted by the defendant's particular circumstances. *Ake,* 105 S.Ct. at 1096. Second, the expert can coherently present to the jury his or her observations of the defendant, as well as his or her understanding of the defendant's mental history, and explain to the jury how

those observations and that history are relevant to the defendant's mental condition. *Id.* at 1095. Finally, the expert can "assist in preparing the cross-examination" of psychiatric experts retained by the government. *Id.* at 1096.

Of course, the utility of the independent expert to the defense will diminish as the importance of the defendant's mental condition declines in a particular case. Thus, before the due process clause will mandate that a psychiatric expert be retained at government expense, a defendant must make a preliminary showing "that his [or her] sanity is likely to be a significant factor in his [or her] defense." *Id.* Similarly, 18 U.S.C. § 3006A(e) provides for expert assistance only after a defendant has shown that such services are "necessary." The services are "necessary" when a defendant can show that his mental condition will be a significant factor at trial. *See United States v. Sloan,* 776 F.2d 926, 929 (10th Cir.1985); *see also United States v. Alden,* 767 F.2d 314, 318 (7th Cir.1984) (government-paid psychiatric expert not mandated by § 3006A(e) where defendant is engaging in a "fishing expedition").

In this case, the defendant's counsel, on March 7, 1986, notified the government that the defendant might rely on a mental condition defense at trial. Shortly thereafter, at the request of defense counsel, the district court transferred the defendant to the Federal Medical Center ("FMC") at Rochester, Minnesota, for testing to determine whether the defendant was competent to stand trial and sane at the time of the alleged crimes. Two medical personnel, Dr. Christina Echols, a staff psychologist, and Timothy Ondahl, the Unit Manager of the FMC's chemical dependency program, independently examined the defendant and each found that he was competent to stand trial and sane at the time of the commission of the crimes. Dr. Echols concluded that, while the defendant exhibited a Mixed Personality Disorder Consisting of Anti–Social and Passive–Aggressive Features, he suffered from no major mental illness. Ondahl examined the defendant for signs of alcoholism and determined that "the usual indications or symptoms used to identify

chemically [sic] dependency indicate that Mr. Fazzini is not chemically dependent." Thus, the defendant was returned to Chicago to stand trial.

On September 15, 1986, the defendant made his first request for the aid of a government-paid independent psychiatric expert. The district court, citing the results of the tests performed at the FMC, denied that request. The defendant renewed his request on December 10, 1986, but was again unsuccessful. The defendant eventually went to trial without the aid of any independent psychiatric assistance.

The defendant claims that, at the time he made his request for an independent psychiatric expert, three pieces of evidence showed that his mental condition would be a significant factor at trial. First, there was a letter from a Dr. Dach which stated that the defendant, in 1975, was diagnosed as suffering from Acute Schizophrenic Reaction and was hospitalized in connection with that illness.[2] Second, the defendant's counsel informed the court that the defendant had a history of alcoholism and had been hospitalized on more than one occasion for treatment of that disease. Finally, the district court experienced the defendant's volatile nature first-hand in his inability to cooperate with appointed counsel, resulting in the withdrawal of four separate attorneys, and in his combativeness in dealing with the court. The district judge found that this evidence was insufficient to show that the defendant's mental condition would be a substantial issue at trial and, although it is a close question, we cannot find that that decision was an abuse of discretion.

■ The district judge primarily based her decision on the results of the defendant's testing at the FMC. *See Alden*, 767 F.2d at 319 (district judge can properly consider results of government testing in determining whether a defendant's mental condition will be a significant factor at trial). Those examinations provided no evidence to support the defendant's contention that he was a chronic alcoholic. The examinations at the FMC did reveal that the defendant suffered from a personality disorder that made it difficult for him to interact in a normal fashion with other people. That disorder, which falls short of the sort of mental illness that could provide a viable defense, explained both the difficulty the defendant encountered in retaining appointed counsel and the defendant's contentious attitude toward the proceedings in the district court. *See Tucker v. Kemp*, 818 F.2d 749, 752 (11th Cir.), *cert. denied*, 481 U.S. 1063, 107 S.Ct. 2209, 95 L.Ed.2d 863 (1987) (no showing that defendant's mental health would be a significant issue at trial where government examination showed, among other things, that the defendant suffered only from a personality disorder rather than any serious mental illness). Thus, the only evidence that the defendant's mental health might be a substantial issue at trial was the letter from Dr. Dach.

■ Reactive Schizophrenia, the ailment ascribed to the defendant in the letter, is defined as "those forms of severe schizophrenic disorders which are distinguished from process schizophrenia by their more acute onset, greater relation to environmental stress, and better prognosis." STEDMAN'S MEDICAL DICTIONARY 1261 (5th ed. 1982). Since full remission for those who suffer from schizophrenia is

---

2. Dr. Dach was the partner of a Dr. J.L. Marks, now deceased, who was the defendant's treating physician. While it is unclear whether the letter from Dr. Dach was actually in the record at the time the district court denied the request for an independent psychiatric expert, the judge was aware of the defendant's history of schizophrenia. Richard Leng, one of the defendant's appointed counsel, had informed the court in a motion filed on March 7, 1986, that:

Defendant was treated for acute schizophrenia, paranoid type, by Dr. J.L. Marks, ..., in

1975. This treatment included defendant's legal commitment on April 1, 1975. Defendant's treatment include [sic] the use of psychotherapy and psychotropic drugs. Defendant refused to cooperate with treatment and after his discharge refused to continue therapy.

We note that Leng was apparently incorrect in asserting that the defendant suffered from Paranoid Schizophrenia. The letter from Dr. Dach reported that the defendant actually suffered from Acute Schizophrenic Reaction.

rare, AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS (3d ed. rev. 1987), we agree with the defendant that the letter was some evidence that his mental condition could be a substantial issue at trial. Nevertheless, we cannot find that the district judge abused her discretion by finding that the letter standing alone was insufficient to show that the defendant's mental condition would be a substantial issue at trial.

First, the 1975 diagnosis of schizophrenia was at least partially refuted by Dr. Echols' determination that the defendant suffered from no major mental illness.[3] Second, although the defendant was never clear about what mental condition he claimed he suffered from—alternatively calling it "alcoholism," "alcohol-induced unconsciousness," and "insanity"—the defendant focused his mental condition argument on the alcohol-related conditions. The evidence of schizophrenia contained in Dr. Dach's letter, however, was never connected by the defendant to his claims of alcoholism and alcohol-induced unconsciouness. Third, the defendant made no attempt to explain how his schizophrenia, assuming he actually suffered from that disease, would affect the government's ability to convict him for the particular crimes with which he was charged or his capacity to stand trial. The defendant never argued, for example, that his schizophrenia prevented him from being able to discern the difference between right and wrong. Under those circumstances, we are unable to find that the district judge abused her discretion by refusing to permit the defendant to obtain, at government expense, the assistance of an independent psychiatric expert.

The defendant also alleges that the district court erred in refusing to allow him to introduce evidence regarding his mental condition at trial. The defendant proposed to introduce evidence of his chronic alcoholism, although he never clearly specified what that evidence would be, as well as the testimony of Dr. Gregory Blevins, an expert on the effects of alcoholism. The district court refused to allow the defendant to introduce any evidence of his mental condition, citing three reasons to support the exclusion. First, the district court stated that the defendant's allegations of mental defect were too vague to merit consideration. As discussed above, the record shows that at various times the defendant described his condition as "alcoholism," "alcohol-induced unconsciousness," and "insanity," but never clearly specified upon which impairment he was relying. Second, the district court said that the defendant had failed to give timely notice to the Government, as required by Federal Rule of Criminal Procedure 12.2, of his intent to rely on a mental condition defense. Finally, the court referred to the defendant's examination at the FMC where he was uncooperative in his examinations and where the government experts found no verifiable evidence that he suffered from a chemical dependency or major mental illness.

We review a district court's decision to exclude evidence of a mental condition only for abuse of discretion. *United States v. Buchbinder*, 796 F.2d 910, 914 (7th Cir. 1986). In this case, we find that the district judge did not abuse her discretion by excluding the defendant's evidence, although we base that determination on reasons other than those cited by the court.

Under Federal Rule of Criminal Procedure 12.2(a), a defendant is obliged to give the government notice if he or she plans to utilize a defense based on mental condition. Similarly, Federal Rule of Criminal Procedure 12.2(b) requires a defendant to give the government notice if he or she intends to call an expert witness to support that defense. The district court determined that the defendant did not satisfy these requirements and thus excluded his evi-

---

**3.** It is unclear from the record whether Dr. Echols was aware that the defendant had previously been diagnosed as suffering from Acute Schizophrenic Reaction. Dr. Echols relied upon "investigative materials" in making her assessment but there is no indication of whether the information regarding his schizophrenic history was among those materials.

dence relating to his mental condition and refused to allow Dr. Blevins to testify.

■ The defendant attempted to meet the requirements of Rule 12.2(a) by at least twice notifying the government that the "defense may rely upon a defense based upon mental condition." The issue of notice also came up several times during in court pre-trial proceedings. For example, on February 18, 1987, just prior to trial, the attorney for the government complained that the defendant had not given the government notice of the specific defenses he planned to raise at trial. The defendant answered that, at least with respect to one of the bank robberies, he planned to defend on the basis of unconsciousness caused by chronic alcoholism. The district judge then seemed to find that the defendant had met the notice requirement when she stated to the government's attorney: "So now you have notice, Mr. Heinze, of the specifics." Nevertheless, as discussed above, the district judge eventually excluded the defendant's evidence regarding his mental condition based, in part, on the failure of notice.

The district court decided that the defendant's notice was inadequate because it came too late. Yet, as discussed above, the district judge expressly stated that the defendant had satisfied the notice requirements prior to trial. Under these circumstances, we cannot agree with the district court that the defendant's notice was untimely.

■ The district court was also incorrect in excluding the testimony of Dr. Blevins based on the notice requirement of Rule 12.2(b). We have interpreted that rule to require a defendant who wishes to introduce expert testimony on his mental condition to inform the government of both the name of the witness and the general substance of the testimony that that witness is expected to give. *Buchbinder*, 796 F.2d at 914. In this case the defendant complied with those requirements. In papers filed with the court three weeks prior to trial, the defendant listed Dr. Blevins as one of

the witnesses that would be called by the defense and stated that the Doctor would testify to the "connection between defendant's behavior in relation to medical history and his alcohol dependency." Thus, we believe it was error to exclude the testimony of Dr. Blevins based on insufficient notice.

■ The district court also faulted the defendant for being "vague" about the mental condition defense he intended to assert at trial. However, the colloquy of February 18 showed that the defendant had settled on a single mental condition defense prior to trial, *i.e.* alcohol-induced unconsciousness. Moreover, there is no requirement in Rule 12.2(a) that a defendant specify the particular condition that he or she intends to rely upon. *Buchbinder*, 796 F.2d at 915. Thus, the district judge erred to the extent she faulted Fazzini for being vague about the exact condition upon which he intended to rely.

The district court's final rationale for excluding the evidence—that the results of the defendant's examinations at the FMC showed that the defendant was not suffering from alcoholism or a major mental illness—was also inadequate to justify the court's decision. A defendant has the right to present evidence which is relevant to any viable defense, assuming that there are no other evidentiary barriers to admission. Thus, the question the district court should have asked was not whether the defendant was likely to be able to prove that he actually suffered from a mental condition, but whether evidence of mental condition would have been relevant to a viable defense.

■ We believe that the defendant's mental condition evidence was properly excluded because the evidence was not relevant to a viable defense.[4] As mentioned above, the defendant's claim regarding his mental condition, as explained to the court on February 18, was that he was in a state of alcohol-induced unconsciousness at the

---

4. An appellate court can properly affirm the decision of the district court even when the district court's decision was based on inappro-

priate grounds. *United States v. Click*, 807 F.2d 847, 850 n. 5 (9th Cir.1987).

time of the commission of the crimes. The defendant did not claim, however, that that state left him unable to perceive the difference between right and wrong. Instead, the defendant asserted only that, given his alcohol-induced unconsciousness, he could not form the intent required for culpability for the crime.

At this point, it is important to distinguish between two types of mental condition defenses. The first, sometimes called diminished responsibility, involves situations where the defendant's mental condition completely absolves him or her of criminal responsibility regardless of whether or not their guilt can be proven. *United States v. Twine*, 853 F.2d 676, 678 (9th Cir.1988). The second, sometimes referred to as diminished capacity, involves cases where the defendant claims only that his mental condition is such that he or she cannot attain the culpable state of mind required by the definition of the crime. *Id.; United States v. Bartlett*, 856 F.2d 1071, 1077 (8th Cir.1988). Unlike diminished responsibility, where the mental condition absolves the defendant of guilt, a successful diminished capacity defense means that the prosecution has not proven the defendant's guilt.

In this case, in response to the judge's questions as to the nature of his mental condition defense, Fazzini claimed only that he suffered from diminished capacity as a result of his condition, *i.e.* that he was not guilty because his alcohol-induced unconsciousness negated his ability to form the requisite intent for bank robbery.[5] The problem with this argument is that completed armed bank robbery is a *general* intent crime, *United States v. Smith*, 638 F.2d 131, 132 (9th Cir.1981); *United States v. Emery*, 682 F.2d 493, 497 (5th Cir.1982); *United States v. Johnson*, 660 F.Supp. 786, 787–88 (D.Md.1987) (collecting cases), and diminished capacity is a defense only to *specific* intent crimes. *United States v. Twine*, 853 F.2d at 679. Thus, the defendant's evidence relating to his mental condition was properly excluded as irrelevant

since the evidence would not have tended to prove any proposition of consequence to the determination of this action. *See United States v. Smith*, 638 F.2d at 132 (evidence of diminished capacity irrelevant in prosecution for violation of § 2113(a)); *see also United States v. Click*, 807 F.2d at 850 (To be relevant, evidence must be " 'probative of the proposition it is offered to prove, and ... the proposition to be proved must be one that is of consequence to the determination of the action.' ").

## II.

The defendant next claims that the trial court committed reversible error by failing to advise him of his right to the assistance of counsel during the sentencing phase of his trial. Defendant went to trial without counsel after four court-appointed attorneys had either been dismissed by him or excused by the court. Defendant's first appointed attorney, Richard Leng, withdrew from the case on March 13, 1986. The court then appointed Sheila Murphy to represent the defendant. Murphy withdrew on August 5, 1986 and was replaced by Carl Clavelli. On September 12, 1986, the defendant told the court that he was discharging Mr. Clavelli because "he has neglected my case." At that point the trial court told the defendant that no new counsel would be appointed and expressly found that he had knowingly and voluntarily waived his right to counsel. Shortly thereafter, on September 16, the trial judge agreed to appoint Richard Kling as counsel for the defendant after Kling assured the judge that he was amenable to the appointment. The court warned the defendant that "[t]his is it. If things don't work out with Mr. Kling, this is it...." Kling's representation only lasted until October 8, 1986, when he moved to withdraw from the case based on an "irreparable conflict" with the defendant. The court granted the motion and the defendant proceeded without counsel after the district court again expressly found that the defendant,

---

5. We assume, without deciding, that the defense of diminished capacity survives the Insanity Defense Reform Act of 1984. *See United States v.*

*Twine*, 853 F.2d at 678–79 (expressly holds that the defense of diminished capacity was not abrogated by the Act).

through his actions, had knowingly and voluntarily waived the right to counsel. The court did, however, appoint Mr. Kling to act as shadow counsel for the defendant, a position in which Kling remained throughout the defendant's trial and sentencing.

The defendant claims that he was deprived of his sixth amendment right to the assistance of counsel when the court refused to appoint new counsel following Kling's withdrawal. According to the defendant, the district court's finding that he waived his right to counsel was clearly erroneous. Indeed, the record shows that the defendant never clearly stated that he waived his right to counsel. Instead, on several occasions, the defendant insisted that he was being forced to proceed *pro se* by the court and would have preferred to have new counsel appointed.

It is elementary that a criminal defendant has a sixth amendment right to be represented by counsel at all critical stages of the proceedings, including sentencing. *Mempa v. Rhay*, 389 U.S. 128, 134, 88 S.Ct. 254, 256–57, 19 L.Ed.2d 336 (1967). The defendant also has a corresponding right to conduct his own defense, *Faretta v. California*, 422 U.S. 806, 834, 95 S.Ct. 2525, 2540–41, 45 L.Ed.2d 562 (1975), so long as the decision to represent himself is made knowingly and intentionally. *Id.; Wilks v. Israel*, 627 F.2d 32, 35 (7th Cir.1980), *cert. denied*, 449 U.S. 1086, 66 L.Ed.2d 811 (1981); *McQueen v. Blackburn*, 755 F.2d 1174, 1177 (5th Cir.), *cert. denied*, 474 U.S. 852, 106 S.Ct. 152, 88 L.Ed.2d 125 (1985).

 In this case, the defendant claims that he did not knowingly and intentionally waive his right to appointed counsel since he continued to ask for counsel even after Kling was excused from the case. Yet it is not necessary that a defendant verbally waive his right to counsel; so long as the district court has given the defendant sufficient opportunity to retain the assistance of appointed counsel, defendant's actions which have the effect of depriving himself of appointed counsel will establish a know-

ing and intentional choice. *Wilks*, 627 F.2d at 35–36; *United States v. Moore*, 706 F.2d 538, 539 (5th Cir.), *cert. denied*, 464 U.S. 859, 104 S.Ct. 183, 78 L.Ed.2d 163 (1983).

In *Moore*, the trial court appointed "several attorneys," each of whom was rejected by the defendant. Following the appointment of the defendant's third attorney, the judge, just as Judge Williams did in this case, warned the defendant that failure to cooperate with the fourth appointed attorney would signal a waiver of the right to counsel. Just prior to trial, the defendant moved to have new counsel appointed as a result of his inability to get along with counsel. The court refused to appoint new counsel and, after prevailing upon the fourth appointed attorney to act as shadow counsel, found that the defendant had waived his right to counsel. The defendant eventually was convicted and appealed claiming that the district court denied him his right to counsel. The appellate court rejected that claim holding that "a persistent, unreasonable demand for dismissal of counsel and appointment of new counsel ... is the functional equivalent of a knowing and voluntary waiver of counsel." *Id.* at 540.

 This case involves facts which closely parallel the facts in *Moore*. The district judge in this case, just like the district judge in *Moore*, faced a defendant who refused to cooperate with numerous appointed counsel, who was warned of the consequences that his failure to cooperate would have, and who insisted, despite his conduct, that he was not waiving his right to appointed counsel. We agree with the Fifth Circuit that given this set of circumstances, the defendant has knowingly and intelligently waived his right to appointed counsel.[6]

 The defendant claims that even if he did waive his right to be represented by counsel at trial, the district court still should have inquired as to whether he wanted to be represented by counsel at sentencing. According to the defendant's

---

**6.** We leave for another day the question of whether this kind of waiver can ever be found absent an explicit warning by the district court that no further counsel will be appointed.

view of the law, it is incumbent upon the judge to ensure that at each critical phase of the proceedings, the defendant is asked whether he wishes to continue without counsel. We disagree. Once the defendant has knowingly and intelligently waived his right to counsel, only a substantial change in circumstances will require the district court to inquire whether the defendant wishes to revoke his earlier waiver. *Schell v. United States,* 423 F.2d 101, 103 (7th Cir.1970); *Harig v. Wolff,* 414 F.Supp. 290, 296 (D.Neb.1976).

In *Schell,* the defendant, a 20–year old, pled guilty to violations of the Dyer Act after waiving his right to an attorney. The district judge told the defendant, prior to his plea, that the maximum penalty for those violations was five years in jail, $5000 in fines, or both. Following the plea, the judge decided that the defendant would be sentenced under the Youth Corrections Act, which carried a maximum penalty of six years. The judge informed the defendant that he had the right to change his plea but never asked the defendant whether he wanted representation at the sentencing hearing. On appeal, we concluded that:

> *Under all the circumstances*—the youth and inexperience of Schell, the lapse of six months between [the plea hearing and the sentencing hearing], the change in posture of the case due to the events in the interim and due to questions of the validity of the March plea— the express waiver of counsel in March should not be deemed effective in September.

*Id.* at 103 (emphasis added); *see also Harig,* 414 F.Supp. at 296 ("Unless changes in condition occur ... an original waiver is constitutionally effective at the subsequent sentencing proceedings.")

In this case, no change in circumstances occurred between the time the defendant waived his right to counsel and his sentencing hearing. The defendant was sentenced less than two months after the jury returned the guilty verdict; he was fully aware of the penalties which attached to the crimes for which he was charged and convicted; and no new evidence came to

light which might have required the attention of counsel. Thus, the district judge did not err in proceeding to the sentencing hearing without a new inquiry into the defendant's desires regarding his representation.

The defendant claims, however, that even if the district judge was not required to inquire whether he wanted counsel appointed for sentencing, she still should have appointed counsel since he expressly revoked his waiver following the guilt phase of his trial. Several courts have stated that it is error not to appoint counsel for a sentencing hearing where a defendant expressly withdraws a waiver of counsel submitted during the guilt phase of a trial. *Davis v. United States,* 226 F.2d 834, 840 (8th Cir.1955), *cert. denied,* 351 U.S. 912, 76 S.Ct. 702, 100 L.Ed. 1446 (1956) (court under no obligation to inquire anew at each phase of case whether right to counsel was waived *unless* "something transpired in the interim which justified such further inquiry, such as a request by [the defendant] for counsel and advise when he appeared for sentencing"); *United States v. Holmen,* 586 F.2d 322, 324 (4th Cir.1978). The rationale for this rule seems to be that the revocation of the waiver is a "change in circumstances" sufficient to require, if not the actual appointment of counsel, at least a new inquiry by the judge to determine whether the defendant desires the appointment of counsel.

In a post-trial motion, the defendant in this case moved for the appointment of an attorney to aid him in preparing post-trial motions and to assist him at the sentencing hearing. That motion was denied. The defendant now claims that that motion amounted to an express revocation of his earlier waiver and therefore the district judge should have appointed new counsel. ▆▆▆▆ We agree, as a general matter, that a defendant's express revocation of an earlier waiver upon the commencement of a new phase of the trial requires at least an inquiry by the district judge into the defendant's representational desires. In this case, however, the district judge was justified in not reinquiring since the defendant's

revocation did not actually represent a substantial change in circumstances. The defendant's purported revocation was just a continuation of his attempts before trial to obtain the appointment of a fifth counsel. We believe that given the unique situation facing her, including the availability of standby counsel[7] and the continuing nature of the defendant's requests for counsel, the district judge did not err in refusing to appoint counsel to assist the defendant at sentencing.

## III.

For all the reasons discussed above, we AFFIRM the judgment of the district court.

---

7. The defendant was joined at his sentencing hearing by Richard Kling who acted as shadow counsel for the defendant. Kling had been present throughout the trial and was well aware of the facts and circumstances surrounding the defendant's conviction. Moreover, the defendant, on at least three occasions during the sentencing hearing, actually consulted with Kling before addressing the court.