**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Edwin HARRIS, also known as Michael
Johnson, Defendant–Appellant.**

No. 92–2236.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 29, 1993.

Decided Aug. 16, 1993.

Barry R. Elden, Asst. U.S. Atty., Office of the U.S. Atty., Cr. Receiving, Appellate Div., Chicago, IL, and Robert Christopher Cook (argued), Office of the U.S. Atty., Chicago, IL, for plaintiff-appellee.

Robert A. Korenkiewicz (argued), Chicago, IL, for defendant-appellant.

Before FLAUM, MANION, and ROVNER, Circuit Judges.

MANION, Circuit Judge.

Edwin C. Harris was indicted for several bank robberies. Before trial, he discharged three attorneys. The court appointed a fourth attorney and warned Harris he would not get another opportunity to change counsel. On the morning of trial, Harris discharged his fourth attorney. The court refused to grant a continuance; instead, the court determined that Harris had waived his right to counsel. The court ordered him to proceed *pro se*, with his fourth attorney as stand-by counsel. After jury selection, Harris had an "outburst" in the jury's presence. The court instructed the jury to disregard the outburst, and the trial proceeded. Harris was convicted and sentenced under 18 U.S.C. § 924(c), which requires increased penalties for each subsequent conviction of using a firearm to commit a crime of violence. He appeals and we affirm.

## I.  Facts

Harris robbed four banks in downtown Chicago between September 16, 1988 and November 9, 1990. He used threats in the first robbery, but never displayed a gun. In the ensuing three robberies—which took place on August 10, October 9, and November 9, 1990—he used a .38 caliber semi-automatic weapon. When the police caught Harris immediately after his fourth robbery, the weapon was fully loaded.

Between Harris's arrest and indictment, the district court appointed two attorneys to represent him. The first withdrew after citing an "irreparable conflict" with Harris. The second provided representation through the time of indictment, but withdrew after telling the court that Harris was "unable to cooperate" and refused to take legal advice. Harris then privately retained an attorney who did not fare any better. Within a few months he also withdrew, citing "irreconcilable differences" with Harris. The district court then appointed a fourth attorney—

John A. Meyer—and scheduled a trial to begin on August 12, 1991. The court warned Harris that he would not be given another opportunity to change attorneys.

Harris discharged Meyer on the morning that the trial was to begin, claiming that Meyer was a racist. Harris is black, and Meyer is white. Meyer moved to withdraw and also moved for a continuance so that Harris could retain new counsel. The court allowed Meyer to withdraw, but denied the motion for continuance. The court determined that Harris had waived his right to counsel and had elected to proceed *pro se*. The court appointed Meyer as stand-by counsel, and the jury selection process commenced.

The perils of proceeding *pro se* are well exhibited by Harris's next actions in the courtroom. After jury selection—in his first official actions on his own behalf—Harris made an impromptu speech to the jury claiming that he was a victim of racial discrimination and that he was being tried against his will. After speaking his piece, he climbed onto counsel table and screamed such things as "Kill me!" and "Shoot me!" He then made a sudden break for the door but court security officers restrained him. The court ordered a recess, after which the court instructed the jurors to disregard the outburst. The court then adjourned for the day. The next day, Harris made a belated motion for a mistrial based on his previous outburst. The court denied that motion, and the trial proceeded.

The government's case at trial consisted mostly of eyewitness accounts and video surveillance footage of Harris's bank robberies. In his defense, Harris conducted direct and cross-examinations of witnesses, and he gave the closing argument. Meyer made the opening statement. The jury deliberated for three hours, and found Harris guilty on all counts charged in the indictment: one count of bank robbery in violation of 18 U.S.C. § 2113(a), three counts of armed bank robbery in violation of 18 U.S.C. § 2113(a) and (b), and three counts of using a firearm in the commission of a crime of violence in violation of 18 U.S.C. § 924(c). Later, the district court sentenced Harris. Section 924(c) includes a clause escalating the penalties for subsequent convictions under the statute and prohibiting the district court from imposing such penalties concurrently. Accordingly, the district court sentenced Harris to five years for his first violation of section 924(c), twenty years for his second violation, and twenty years for his third, with the three sentences to run consecutively.

Harris appeals his conviction and sentence, contending that he was denied his Sixth Amendment right to counsel; that the district court erred by failing to grant his request for a continuance on the morning of the trial; that the district court should have granted his motion for a mistrial after his outburst; and that the escalating sentences the court imposed under section 924(c) violated the statute.

## II. Analysis

### A. Sixth Amendment Right to Counsel

■ Before appointing Meyer as the fourth attorney to represent him, the district court warned Harris: "[t]hat is going to be the end of it or you can represent yourself." Harris waited until the morning of the trial to discharge Meyer. After allowing Meyer to withdraw, the district court determined that Harris had waived his right to counsel and had elected to proceed *pro se*. The court warned Harris about the dangers of self-representation, appointed Meyer as stand-by counsel, and proceeded with the trial. Harris now contends that the district court denied him his constitutional right to be represented by an attorney.

In *United States v. Fazzini*, 871 F.2d 635 (7th Cir.), *cert. denied*, 493 U.S. 982, 110 S.Ct. 517, 107 L.Ed.2d 518 (1989), we confronted facts similar to this case. There, the defendant fired three court-appointed attorneys in succession. The district court refused to appoint a fourth attorney and expressly found that the defendant had waived his right to counsel. Shortly thereafter, the district court relented and appointed a fourth attorney, warning the defendant "[t]his is it. If things don't work out with [the new attorney], this is it. . . ." *Id.* at 641. Within weeks, the defendant discharged the fourth

attorney. The district court determined that the defendant—through his actions—had knowingly and voluntarily waived his right to counsel. The district court appointed the fourth attorney as shadow counsel, and he represented the defendant in that capacity through the conviction and sentencing. The defendant appealed, claiming he was denied his right to counsel during sentencing.

On appeal, we agreed with the district court's conclusion that the defendant was not deprived of his right to counsel. We held that "it is not necessary that a defendant verbally waive his right to counsel; so long as the district court has given the defendant sufficient opportunity to retain the assistance of appointed counsel, defendant's actions which have the effect of depriving himself of appointed counsel will establish a knowing and intentional choice." *Id.* at 642. We cited *United States v. Moore*, 706 F.2d 538, 539 (5th Cir.), *cert. denied*, 464 U.S. 859, 104 S.Ct. 183, 78 L.Ed.2d 163 (1983), a case with similar facts. We noted the parallels between that case and the one we were deciding: "[t]he district judge in this case, just like the district judge in *Moore*, faced a defendant who refused to cooperate with numerous appointed counsel, who was warned of the consequences his failure to cooperate would have, and who insisted, despite his conduct, that he was not waiving his right to appointed counsel." *Fazzini*, 871 F.2d at 642.

The same conditions of waiver are present in this case. Harris discharged four attorneys, the last on the morning of his trial. Before appointing the fourth attorney, the district judge warned Harris "[t]his is going to be the end of it or you can represent yourself." Harris proceeded to fire his fourth attorney. Our decision in *Fazzini* controls. By his behavior, Harris waived his right to counsel.

## B. *Failure to Grant a Continuance*

■ After discharging Meyer on the morning of the trial, the defendant requested a continuance to obtain a new attorney. The district court denied that request, and later explained its reasons in a written order:

Defendant cannot lay the blame on the court for his continued failure to get along with his attorneys or to obtain private counsel in a timely fashion. Having set aside time for trial and summoned witnesses, the court had discretion to deny defendant's last-minute request for a continuance.

Harris appeals, contending that the district court's failure to grant a continuance so that he could retain private counsel violated his Sixth Amendment right to an attorney.

The Supreme Court has held that "broad discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for a delay' violates the right to the assistance of counsel." *Morris v. Slappy*, 461 U.S. 1, 11–12, 103 S.Ct. 1610, 1616, 75 L.Ed.2d 610 (1983) (quoting *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 849, 11 L.Ed.2d 921 (1964)). Our task is to determine whether the district court abused its broad discretion by failing to grant a continuance. "Generally, an abuse of discretion only occurs where no reasonable person could take the view adopted by the trial court. If reasonable persons could differ, no abuse of discretion can be found." *United States v. Fulford*, 980 F.2d 1110, 1114 (7th Cir.1992) (citations omitted).

Harris's persistent inability to get along with his attorneys was the only reason for delay. That is not a justification; it is simply a bad excuse. A reasonable person could conclude that Harris's request for delay was not justified, and therefore, that the court's insistence on expeditiousness was appropriate. A district court should not be required to work its schedule to accommodate the type of insolence which Harris displayed. Our system provides a fair forum and expects parties to behave reasonably in that forum. If a party intentionally hamstrings his defense, fairness does not require that the court intervene to rescue him.

## C. *Outburst*

■ The day after his outburst before the jury, Harris moved for a mistrial. The court denied that request. Harris now

claims that the district court erred by not granting a mistrial. We review a district court's denial of a motion for a mistrial under an abuse of discretion standard. *United States v. Chaussee,* 536 F.2d 637, 641 (7th Cir.1976). In *Chaussee,* a district court refused to grant a mistrial after the defendant attempted to escape during trial, in the presence of the jury. We affirmed the district court, reasoning that "[t]o allow a defendant by his own misconduct to terminate his trial even temporarily would be to allow him to profit from his own wrong." *Chaussee,* 536 F.2d at 641. The same reasoning applies to this case. Harris should not profit from his outburst. The district court did not abuse its discretion in reaching that conclusion.

### D. Escalating Sentences

■ After the judgment of conviction, the district court applied section 924(c) and sentenced Harris to a total of forty-five years for the three times he used a gun to rob banks: five years on the first; twenty years on the second; and twenty years on the third. Harris argues that Congress never intended the escalating sentencing scheme of section 924(c) to be applied to "subsequent" convictions arising from the same indictment. He reasons that the harsher punishment for the second and subsequent convictions provides a deterrent effect only if the criminal defendant is warned after his first conviction that the punishment will be harsher the next time. In this case, because Harris was sentenced at one time for the three bank robberies, he was never warned of the escalating punishment.

Harris faces an insurmountable obstacle in his theory of statutory construction: the text of the statute. The statute fails to make the distinction which Harris identifies. Instead, the statute unambiguously requires application of the escalating sentences, without regard to whether the defendant suffers the convictions at one proceeding or several. Harris argues that the statute is ambiguous and should be read to provide a more lenient result. However, we rejected that argument in *United States v. Bennett,* 908 F.2d 189, 194 (7th Cir.), *cert. denied,* 498 U.S. 991, 111 S.Ct. 534, 112 L.Ed.2d 544 (1990), and more

recently the Supreme Court rejected the notion that section 924(c) is ambiguous, and affirmed a 105–year sentence for six bank robbery convictions arising from a single proceeding. *Deal v. United States,* —— U.S. ——, ——, 113 S.Ct. 1993, 1998, 124 L.Ed.2d 44 (1993) ("There is utterly no ambiguity in [the text of the statute], and hence no occasion to invoke the rule of lenity.") *Id.* at 1998. Here Harris committed three armed bank robberies within three months. While there was one indictment, there were three separate crimes. Congress designed this very punitive sentence structure for just such a threat to society.

### III. Conclusion

Harris was not deprived of his right to counsel. He had several opportunities to be represented by counsel, but he rejected four lawyers. Nor did the district court abuse its discretion either in failing to grant a continuance so that Harris could obtain a fifth attorney, or in failing to grant a mistrial after his outburst. Also, the forty-five year sentence did not violate section 924(c). That statute unambiguously provides for escalating sentences in the case of subsequent convictions for using a firearm to commit a crime of violence. The district court is

Affirmed.