## PEOPLE v. GRIFFIN

1. CONSTITUTIONAL LAW—ASSISTANCE OF COUNSEL—MENTAL HEALTH
—SEXUAL PSYCHOPATH.

The assistance of counsel is a fundamental right essential to
a fair trial and the denial of such assistance violates the
Fourteenth Amendment where the result of a commitment
as a criminal sexual psychopath can mean that defendant
may remain in custody for the rest of his life (US Const,
Am 14).

2. APPEAL AND ERROR—INDIGENCY.

Finding that defendant was not an indigent was a clear abuse
of discretion where the trial court erroneously concluded that
defendant had an equity in a house without considering that
the equity had been awarded to the ex-wife of defendant by
a default divorce order.

3. BAIL—BONDS—FORFEITURES.

Forfeiture of defendant's $1,000 bond for failure to appear at
a preliminary examination and the increasing of that bond
to $8,000 was without justification where defendant could not
appear because he was in custody on a separate charge.

Appeal from Macomb, Edward J. Gallagher, J.
Submitted Division 2 December 4, 1969, at Lansing.
(Docket No. 5,504.) Decided February 25, 1970.

REFERENCES FOR POINTS IN HEADNOTES

[1] 21 Am Jur 2d, Criminal Law §§ 309–317.
[2] 21 Am Jur 2d, Criminal Law §§ 318–323.
[3] 8 Am Jur 2d, Bail and Recognizance §§ 139–144.
Discharge, suspension, or remission of bail by reason of imprison-
ment of principal for a different offense. 4 ALR2d 440.

James Griffin was committed as a criminal sexual psychopath. Defendant appeals. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *George N. Parris,* Prosecuting Attorney, *Thaddeus F. Hamera,* Chief Appellate Lawyer, and *Stephen F. Osinski,* Assistant Prosecuting Attorney, for the people.

*James Griffin, in propria persona.*

Before: FITZGERALD, P. J., and BRONSON and T. M. BURNS, JJ.

T. M. BURNS, J. Defendant was arrested on April 29, 1967 and arraigned on May 1, 1967 on a warrant charging a violation of MCLA § 750.335a (Stat Ann 1954 Rev § 28.567[1]), indecent exposure. He pled not guilty and was released on $1,000 bond. A preliminary examination was set for May 11, 1967. On that date, the defendant was in custody on a separate assault and battery charge. When defendant did not appear for examination, his bond was forfeited and a bench warrant issued. Although the warrant was cancelled when the trial court learned that defendant was in custody, the original bond remained forfeited, and a new bond was set at $8,000. Defendant was unable to furnish bond and remained in custody.

The preliminary examination was re-set for May 22, 1967. On May 16, 1967, the defendant requested that a counsel be appointed to assist him. The examining judge denied this request on the basis that defendant's affidavit of indigency stated that he had equity in real estate of approximately $17,-500 and weekly earnings of $164.

Although the defendant had lost his job because he was in custody, and had no savings, the court said, on May 16, 1967, that in cooperation with his wife defendant could get a second mortgage on his house so that he could retain counsel; and, therefore, he was not an indigent.[1]

On May 22, 1967, defendant was bound over for trial without examination. On June 8, 1967, defendant appeared, asserting that he could not afford an attorney, and that he, therefore would defend the action himself. The $8,000 bond was continued and defendant was remanded to custody.

Between June 8 and his next appearance in court on July 10, 1967, defendant's wife was granted a default judgment of divorce, and as part of the property settlement she was given the house and all the furniture "free and clear" of any claim of the defendant.

On July 5, 1967, the prosecuting attorney filed a petition seeking to have defendant examined and committed as a criminal sexual psychopath under PA 1939, No 165. This petition was heard on July 10, 1967, at which time the prosecutor brought the question of appointment of counsel for defendant to the court's attention. The court, after it had granted the prosecutor's petition for examination, and despite the fact that default divorce order had been entered on June 19, 1967 in the same county said, "if it appears from the reports of the psychiatrists that he is going to need counsel, he can

---

[1] In his affidavit of indigency, dated May 12, 1967, the defendant indicated that he had no present employer. Consequently, his stated weekly earnings were not present earnings, but what he' had been earning before he was in custody. Further, the amounts stated as being equity and amount owed are clearly in error. Yet, even without these obvious mistakes and misconceptions, the defendant, to the best of his limited ability, made it quite clear that the real estate in question was not freely alienable by him as it was subject to a pending divorce decree.

probably make some arrangements with counsel based upon his share of the equity in the house."

A hearing was held on October 24, 1967, at which time the psychiatrists testified. No other testimony was offered. The defendant made no attempt to cross-examine.

At the close of the psychiatric testimony, the court indicated that he was ready to make a decision immediately, without hearing from the defendant at all. However, the prosecutor requested that he "give the defendant an opportunity to say something." When the defendant indicated that he had nothing to say for the record, the judge immediately committed him to the custody of the State Mental Health Commission as a criminal sexual psychopath.

Defendant filed an application for delayed appeal and a motion for appointment of appellate counsel. The application for delayed appeal was granted, and in November of 1968, a testimonial record was ordered by this Court on the question of indigency. The committing judge met with the prosecutor on February 18, 1969, the defendant not being present or represented, and made a "testimonial record" in support of its conclusion that the defendant was not indigent.[2]

---

[2]                                    February 18, 1969   11:45 am
                                       Mount Clemens, Michigan

"*Mr. Osinski:* May it please the court, this is in the matter of the People of the State of Michigan versus James Edward Griffin, Circuit Court File Number C67–539, Court of Appeals Number 5504.

"On November 13, 1968, the Michigan Court of Appeals entered an order requesting that the trial court make a testimonial record supporting the trial court's conclusion of solvency as to the respondent James Edward Griffin. And for the record may I just point out a few preliminary points of information: This defendant was arraigned on information in this honorable court on June 8, 1967 on the charge of indecent exposure, and this is contrary to MCLA § .750.335a (Stat Ann 1954 Rev § 28.567[1]). Now, prior to the arraignment on information, the defendant had requested the appointment of counsel, and he supplied the court with the affidavit of financial condition, and his request for counsel, and this matter was considered by the Honorable Walter P. Cynar on May 16, 1967

This Court, based upon the circuit court's determination that the defendant was not an indigent, denied defendant's motion for appointment of appellate counsel on March 20, 1969.

which is obviously the date before the arraignment on information. There is no record made by Judge Cynar as to the denial of appointed counsel at that time. The court disposition sheet merely shows that there was a lack of showing on indigence based on the affidavit of financial condition. At the time of arraignment on information before this honorable court on June 8, 1967 the defendant made request again for appointed counsel. And this court, the Honorable Edward J. Gallagher considered the request and proceeded to examine the affidavit of financial condition submitted by the defendant. The affidavit of financial condition indicates that Mr. Griffin had a realty equity of approximately $18,000 or specifically $17,590. The affidavit likewise listed the fact that Mr. Griffin had weekly earnings of $164 at least up to the time of incarceration.

"Now, your Honor, as I read the transcript at that arraignment it appears to me that the court had denied the request based upon the earnings and based upon his correctly, correction, based upon his realty equity. Now, at the time this honorable court considered this request for appointment of counsel at the time of arraignment on information, this court was talking in terms of $1,800 equity in the house as opposed to the $18,000 equity listed by the defendant. I submit to the court that this factor worked for the benefit, that is of the defendant, because the court was considering his equity as $1,800 as opposed to $18,000.

"Now, the Court of Appeals has requested that a testimonial record be made to support the trial court's conclusion of solvency, and I trust that the preliminary remarks that I have just made will assist the court in remembering the facts of the case, and I assume also that the court has read the file, the circuit court file, and the transcript contained therein.

"*The Court:* Well, there is no doubt in my mind but what Judge Cynar was right in refusing to grant counsel on the basis of indigency based upon the household equity as represented to him, plus the earning capacity as represented to him. By the time the file got to me the earning, or the household equity had shrunk considerably. Obviously the defendant had made a mistake. But nevertheless, the earning capacity up to the time of arrest had been considerable.

"There appears to be no doubt in my mind but what the defendant, in cooperation with his wife could have obtained a second mortgage upon the premises involved sufficient to pay attorney fees for a high court misdemeanor had he wished to do so. Further more, there is no doubt in my mind but what the defendant could have obtained a loan from a finance company sufficient to pay attorney fees for a high court misdemeanor if he wished to do so. I can see no point in saddling the county with an obvious burden in such a case as this. The defendant, while not immediately equipped to pay was equipped to pay to obtain the money to pay, and certainly should have done so. It was—he was on bond, wasn't he?

The cause was submitted to the Court on briefs
for determination on the merits on December 4,
1969, with the defendant continuing *in propria per-
sona.*

"The assistance of counsel to an indigent defend-
ant in a criminal trial is a fundamental right es-
sential to a fair trial and the denial of such as-
sistance violates the Fourteenth Amendment."
*People* v. *Stearns* (1968), 380 Mich 704, 713. So
also here where the result of a commitment as a
sexual psychopath can mean that defendant may
remain in custody for the rest of his life.

After a full and careful review of the record
on appeal, we find that the trial court's finding that
defendant was not an indigent is a clear abuse of
discretion. The "testimonial record" prepared by
the trial court in support of its determination pro-
duced nothing.

The defendant, who dropped out of school at age
16 in the 9th grade, prepared the affidavit of
indigency without assistance and apparently without
knowing the meaning of the word "equity". The
figure which he put in as his equity was in fact the
approximate market value of the house. The actual
equity in the house was much closer to the $1,800
found to be his equity by the committing judge. The
"testimonial record" indicates that the court was
aware that defendant had made a mistake when he
filled out the affidavit. Yet, in July of 1967, and
again in February of 1969, the court, which must

---

"*Mr. Osinski:* Originally when he was arrested an arraignment
on warrant bond was set in the amount of $1,000 and he posted it
the very same day.

"*The Court:* That's right.

"*Mr. Osinski:* And he was released pending preliminary examina-
tion.

"*The Court:* And he was at liberty, and was certainly free to go
about obtaining money to obtain counsel. It appears to me to
be ridiculous to assume that the county should pay for counsel in a
situation like this where there's no actual indigency shown."

have by then at least had the default divorce order before it as people's exhibit C, made reference to defendant's nonexistent equity in the house which had been given to his ex-wife.

Further, since defendant was in custody from, at least, May 11, 1967 on, he was unable to earn money with which to retain an attorney. Certainly if defendant had had an attorney, he would have been counseled to put up a more vigorous defense to the commitment proceedings. For if he had been tried and convicted on the original charge of indecent exposure, the maximum penalty would have been only one year. MCLA § 750.335a (Stat Ann 1954 Rev § 28.567[1]).

Since the court below erred in denying the defendant the assistance of appointed counsel, we reverse and remand for rehearing.[3] On remand, the defendant shall be given the assistance of a court-appointed counsel.

Further, we find that the forfeiture of the original $1,000 and the increasing of bond to $8,000 was without justification. The crime with which defendant was charged was a misdemeanor, having a maximum penalty of one year. Although defendant did fail to appear on the date originally set for his preliminary examination, his nonappearance was adequately explained to the court, since he was in custody, and could not legitimately be used as a reason for increasing bail.

Therefore, we further order that the original bail of $1,000 be reinstated pending rehearing.

Reversed and remanded.

All concurred.

---

[3] Although PA 1939, No 165 under which defendant was committed was repealed by PA 1968, No 143, the Supreme Court has, by its decision in *People* v. *Shields* (1969), 382 Mich 593, 594, ordered that hearings pursuant to PA 1939, No 165 for commitment as criminal sexual psychopaths must still be held.