**Frank Charles BEATTY,
Petitioner–Appellee,**

v.

**Patricia CARUSO, Respondent–
Appellant.**

No.  01–1292.

United States Court of Appeals,
Sixth Circuit.

May 15, 2003.

Before BOGGS, SILER, and GIBBONS, Circuit Judges.

## OPINION

GIBBONS, Circuit Judge.

Petitioner-appellee Frank Charles Beatty was convicted of larceny in Michigan state court. After dismissing two court-appointed appellate attorneys, Beatty proceeded *pro se* in his appeal, which was unsuccessful. Beatty then filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the United States District Court for the Eastern District of Michigan. The district court granted the petition, finding that Beatty had not validly waived his right to appellate counsel. In view of Beatty's written requests to proceed without counsel after he had asked his two previous attorneys to withdraw, we hold that it was not objectively unreasonable for the state court to find that Beatty had knowingly and voluntarily waived his right to counsel. Therefore, we reverse the district court's grant of habeas relief.

### I.

On September 26, 1991, following a bench trial in Michigan state court, petitioner-appellee Frank Beatty was found guilty of one count of larceny from a person and one count of possession of a firearm during the commission of a felony. The trial court sentenced him to two to ten years imprisonment for larceny and two years imprisonment for the firearm charge. After sentencing, Beatty requested that the trial court appoint him counsel for his appeal, preferably from the State Appellate Defender's Office. On March 27, 1992, the trial court granted Beatty's request, appointing attorney Rolf Berg of that office. Four days later, notwithstanding Berg's appointment, Beatty filed a *pro se* claim of appeal in the Michigan Court of Appeals seeking peremptory reversal of his conviction. This motion was returned to Beatty by the court because he was represented by counsel.

On July 6, 1992, Beatty requested substitute appellate counsel on the ground that Mr. Berg "tried to deceive [him] in an attempt to protect [his] trial attorney." He stated that he had filed grievances against both Berg and Henry Scharg, the trial attorney.[1] His grievance against Berg stated that Berg had been rude and disrespectful and that he had not shown sufficient interest in Beatty's case in a telephone call with Beatty. On October 9, 1992, Beatty (through Berg) filed a motion in the trial court to vacate the order of appointment of counsel. The trial court granted the motion five days later and appointed a second attorney, James C. Hall, on October 14, 1992.

On February 23, 1993, Beatty filed a *pro se* motion in the trial court to vacate Hall's appointment as appellate counsel, claiming that Hall was hindering his access to the courts and his ability to defend himself. He stated that he had filed a complaint against Hall with the Attorney Grievance Commission. In his motion, Beatty also stated that he intended to proceed *in propria persona*[2] on appeal, and he did not request a third appointment of counsel at that time. Hall then filed a motion to withdraw, claiming an irreparable breakdown in the attorney-client relationship.

Beatty then reaffirmed his decision to proceed without counsel. On March 1, 1993, he filed a motion in the Michigan Court of Appeals seeking leave to proceed *in propria persona*, stating that he had

---

1. The United States Magistrate Judge's report states that the Michigan Attorney Grievance Commission dismissed both grievances.

2. We understand the phrases *in propria persona* and *in pro per*, used by Beatty, to be synonymous with the term *pro se. See* Black's Law Dictionary 796 (7th ed.1999).

received no assistance from his second attorney, James Hall. The Michigan Court of Appeals granted Hall's motion to withdraw as counsel four days later. On April 12, 1993, Beatty filed a *pro se* motion in the Michigan Court of Appeals. The title of the motion indicated that Beatty sought remand and appointment of appellate counsel. In the body of the motion, Beatty asserted both that he did not want to waive his right to counsel and that he wanted to defend himself. On May 3, 1993, the Michigan Court of Appeals granted Beatty's March 1, 1993, motion to proceed *in propria persona* for the limited purpose of his previously filed motion for peremptory reversal and denied the motion for peremptory reversal.

On May 21, 1993, Beatty filed an application for leave to appeal in the Michigan Supreme Court, apparently wishing to appeal the Michigan Court of Appeals' May 3, 1993, order. In this application, he added claims that he was denied due process at trial and that the trial court had violated his rights by not appointing appellate counsel. On the same date, May 21, 1993, the Michigan Court of Appeals denied Beatty's April 12, 1993, motion for appointment of counsel, because of Beatty's "failure to persuade the Court that the trial court erred in refusing to appoint a third appellate counsel for defendant." Beatty sought appointment of appellate counsel again in a January 4, 1994, motion to the Michigan Court of Appeals, with the same result.

Beatty continued to file numerous motions, including a March 29, 1994, application for leave to appeal in the Michigan Supreme Court, arguing that the trial court abused its discretion by denying him a third appellate counsel. The Michigan Supreme Court denied Beatty's application "without prejudice to defendant seeking relief from [the trial] Court pursuant to MCR 7.208(G)." [3] Also in 1994, Beatty filed a habeas corpus petition, which was dismissed because some of the issues raised had not been exhausted in the state courts. Beatty's filings continued, but his appeal was ultimately unsuccessful. On October 24, 1995, the Michigan Court of Appeals issued an unpublished opinion affirming Beatty's conviction. On November 7, 1995, Beatty sought leave to appeal this decision to the Michigan Supreme Court, raising two issues: denial of appointment of counsel and denial of due process at trial. However, the Michigan Supreme Court denied his application for leave to appeal.

On January 6, 1997, Beatty filed a motion for leave to file a second petition for writ of habeas corpus in this court. In his motion, he stated that he had exhausted all state remedies with respect to the issues raised in his habeas petition. This court agreed that he had exhausted his state remedies and dismissed his motion as unnecessary, since the habeas petition was not a second petition within the meaning of 28 U.S.C. § 2244. Therefore, on September 16, 1997, Beatty filed a petition for habeas corpus with the United States District Court for the Eastern District of Michigan, contending that his conviction was improper because (1) he was denied his right to the appointment of counsel to prosecute his first appeal of right to the Michigan Court of Appeals and (2) he had been denied effective assistance of counsel at the appellate level. The district court determined that the state court had not taken the proper steps to determine

---

**3.** M.C.R. 7.208(G) provides:

Throughout the pendency of an appeal involving an indigent person, the trial court retains authority to appoint, remove, or replace an attorney except as the Court of Appeals otherwise orders.

whether Beatty's waiver of counsel was knowing and voluntary. Accordingly, the district court granted a writ of habeas corpus on February 1, 2001.

Respondent-appellant Patricia Caruso,[4] through the Michigan Attorney General's office, timely appealed the grant of habeas relief. This court has appellate jurisdiction to review the district court's decision pursuant to 28 U.S.C. § 2253, which states that in habeas actions, a final order by the district court is subject to review, on appeal, by the Court of Appeals for the jurisdiction in which the proceeding is held. The issues raised in this appeal are (1) whether Beatty fully exhausted his claim of denial of appellate counsel in the state courts and (2) whether it was objectively unreasonable for the state court to find that Beatty had validly waived his right to appellate counsel.

## II.

### A.

■ The first question is whether Beatty's claim of denial of appellate counsel, raised in his habeas petition, was sufficiently presented to the state courts. Whether Beatty exhausted his state law remedies is a question of law that we review *de novo*.

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) codified the requirement that an applicant for a writ of habeas corpus must first exhaust his claims in state court before presenting them to federal court. *See* 28 U.S.C. § 2254. This section provides, in part, that:

(b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment

of a State court shall not be granted unless it appears that (A) the applicant has exhausted the remedies available in the courts of the State, . . . .

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

The exhaustion requirement is designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings. *Rose v. Lundy*, 455 U.S. 509, 518, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). Although the exhaustion requirement is not jurisdictional, a petition that includes an unexhausted claim will ordinarily not be considered by a federal court absent "unusual" or "exceptional" circumstances. *Rockwell v. Yukins*, 217 F.3d 421, 423 (6th Cir.2000). For the exhaustion requirement to be satisfied, a petitioner must have "fairly presented" the substance of each federal constitutional claim to the state appellate courts before raising it in his petition for writ of habeas corpus. *Picard v. Connor*, 404 U.S. 270, 275–76, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). A state prisoner petitioner is required to present the legal and factual substance of each issue he seeks to raise in the federal habeas proceeding to all levels of state court review. *See Pillette v. Foltz*, 824 F.2d 494, 496 (6th Cir. 1987). In this case, the exhaustion requirement mandates that Beatty must have presented his claim to the Michigan Court of Appeals and the Michigan Supreme Court.

---

4. Patricia Caruso was the warden at the prison where Beatty was incarcerated when he

initiated his habeas petition.

We find that Beatty has exhausted his claim of denial of appellate counsel. After requesting the discharge of his second appellate attorney, Beatty repeatedly requested that the Michigan appellate courts appoint a third appellate attorney to represent him. He filed motions for appointment of appellate counsel in both the Michigan Court of Appeals and the Michigan Supreme Court. He appealed the denial of one of those motions in his November 7, 1995, application for leave to appeal to the Michigan Supreme Court. These requests were rejected. In light of his multiple motions on the specific issue of appointment of appellate counsel, Beatty has given the Michigan courts at both levels of state appellate review sufficient opportunity to address the issue. There is no "available procedure" by which Beatty could again raise his denial of appellate counsel claim in the Michigan appellate courts. Therefore, it was fairly presented to the state courts.

Respondent-appellant contends that Beatty's claim for denial of appellate counsel is unexhausted because he failed to present this claim to the state courts in a procedurally correct manner. Beatty should have made his request for third appellate counsel to the trial court, pursuant to M.C.R. 7.208(G). While it is true that Beatty's requests would have been more properly directed to the trial court, the Michigan Court of Appeals also has authority to grant or deny an appellant's request for appointed counsel. *See People v. Griffin,* 22 Mich.App. 101, 177 N.W.2d 213, 215 (1970) (remanding and ordering that the defendant have appointed counsel on rehearing). In any event, the Michigan appellate courts elected to consider the merits of Beatty's numerous *pro se* requests for counsel in spite of their procedural flaws. Accordingly, the state courts had a full opportunity to resolve the constitutional issue, and Beatty's state court

remedies were sufficiently exhausted with respect to his denial of appellate counsel claim.

B.

Pursuant to the AEDPA, federal courts must utilize the following standards when reviewing applications for a writ of habeas corpus:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

Under the AEDPA, an unreasonable application of federal law is "different from an *incorrect* or *erroneous* application of federal law." *Williams v. Taylor,* 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411, 120 S.Ct. 1495. Rather, the issue is whether the state court's application of clearly established federal law was "objectively unreasonable." *Id.*

The Fourteenth Amendment guarantees a criminal defendant the right to counsel on his first appeal as of right. *Douglas v.*

*California,* 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963); *Evitts v. Lucey,* 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). However, the right to counsel does not encompass the right to have appointed counsel advance every argument, regardless of merit. *Id.* at 394, 105 S.Ct. 830. Criminal defendants can waive the right to counsel, but waivers must be knowingly made. *Faretta v. California,* 422 U.S. 806, 835, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). Courts indulge every reasonable presumption against waiver. *Brewer v. Williams,* 430 U.S. 387, 404, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977). However, a defendant has the burden of proof in a habeas proceeding to establish that he did not competently and intelligently waive his constitutional right to the assistance of counsel. *Johnson v. Zerbst,* 304 U.S. 458, 468–69, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). A waiver is valid only if the defendant "knows what he is doing and his choice is made with eyes open." *Adams v. United States ex rel. McCann,* 317 U.S. 269, 279, 63 S.Ct. 236, 87 L.Ed. 268 (1942). While a defendant need not himself have the skill and experience of a lawyer in order to competently and intelligently waive his right to counsel, he should be made aware of the dangers and disadvantages of self-representation before so choosing. *Faretta,* 422 U.S. at 835, 95 S.Ct. 2525. Waivers of counsel "must not only be voluntary, but must also constitute a knowing and intelligent relinquishment or abandonment of a known right or privilege, a matter which depends in each case 'upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.'" *Edwards v. Arizona,* 451 U.S. 477, 482, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981) (quoting *Johnson,* 304 U.S. at 464, 58 S.Ct. 1019).

Whether there is a proper waiver should be determined by the trial court, and "it would be fitting and appropriate for that determination to appear upon the record." *Johnson,* 304 U.S. at 465, 58 S.Ct. 1019. However, Supreme Court precedent does not establish any specific procedure, such as a hearing, for informing a criminal defendant of the consequences of a waiver of counsel.[5] At the appellate level, courts will ordinarily not have face-to-face contact with the appellant, and the waiver will be accomplished by written communications. *Oimen v. McCaughtry,* 130 F.3d 809, 812 (7th Cir.1997) (holding that defendant knowingly waived his right to counsel when he discharged his counsel after being notified by appeals court by letter that he might have to proceed *pro se* if he did so).

It is not necessary that a defendant verbally waive his right to counsel. *North Carolina v. Butler,* 441 U.S. 369, 375–76, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979) ("explicit statement of waiver is not invariably necessary to support a finding that defendant waived the right ... to counsel"). If the court has given the defendant sufficient opportunity to retain the assistance of appointed counsel, the defendant's actions which have the effect of depriving himself of appointed counsel will establish

---

**5.** In *Von Moltke v. Gillies,* 332 U.S. 708, 724, 68 S.Ct. 316, 92 L.Ed. 309 (1948), a plurality of four justices, led by Justice Black, suggested that a court faced with a possible waiver of the right to counsel should make a "penetrating and comprehensive examination of all the circumstances" surrounding the waiver of counsel, investigating the defendant's apprehension of the nature of the charges, the statutory offenses, the range of allowable punishments, possible defenses, and all other facts "essential to a broad understanding of the whole matter." No Supreme Court majority has adopted these as requirements. *Toliver v. McCaughtry,* 72 F.Supp.2d 960, 974 (E.D.Wis.1999). However, the Sixth Circuit has approvingly cited *Von Moltke*'s guidelines. *Fowler v. Collins,* 253 F.3d 244, 249 (6th Cir.2001).

a knowing and intentional choice. *United States v. Fazzini*, 871 F.2d 635, 642 (7th Cir.1989). A defendant may waive his right to appointed counsel by his conduct. *United States v. Harris*, 2 F.3d 1452, 1455 (7th Cir.1993) (finding waiver where a defendant refused to cooperate with three different attorneys and had been warned that he would be required to proceed *pro se* if he did not cooperate with the fourth). In a similar case, a defendant who was fully aware when he decided to discharge his counsel that he would have to proceed *pro se* was held to have validly waived counsel "with eyes open." *United States v. Hoskins*, 243 F.3d 407, 410–11 (7th Cir. 2001) (finding that defendant's hope to retain substitute counsel did not make his waiver equivocal).

 In the present case, there is substantial evidence in the record that Beatty's waiver was knowing and voluntary. Not only was Beatty aware that he might have to proceed *pro se* after discharging his appellate attorney, but he actually sought to proceed without counsel. He filed multiple motions stating his intent to proceed without counsel, including a motion seeking leave from the Michigan Court of Appeals to proceed *in pro per*. Beatty's desire to waive appellate counsel was stated explicitly in this motion and demonstrated by his discharge of his two court-appointed appellate attorneys.[6] Although the Michigan Court of Appeals did not explicitly apprise Beatty of the dangers of proceeding *pro se* in his appeal, it could have inferred that Beatty was aware of his rights from his filings with the court. A review of the record indicates that such an inference was reasonable.

Specifically, Beatty's *pro se* "Motion to Vacate Order of Appointment" and "Motion to Proceed In Propria Persona" demonstrate that he was aware of his rights and the likely consequences of proceeding without counsel. In his motion to proceed *in pro per*, Beatty cited and quoted *Faretta*. As appellant points out, this case is replete with warnings about the danger of proceeding without counsel. Beatty quotes portions of *Faretta* emphasizing a defendant's right to defend himself, such as: "the Sixth Amendment ... grants to the accused personally the right to make his defense;" and "[t]he right to defend is given directly to the accused, for it is he who suffers the consequences if the defense fails."

The standard of review in a habeas case is whether the state court's decision was an "objectively unreasonable" application of Supreme Court authority. Given Beatty's repeated requests to proceed without counsel, which reflected an understanding of his rights and the consequences of self-representation, we hold that it was not objectively unreasonable for the Michigan Court of Appeals to find that Beatty had validly waived his right to appellate counsel. Accordingly, the district court erred in granting habeas relief.

III.

For the foregoing reasons, we reverse the district court's grant of a writ of habeas corpus.

---

6. Beatty's purported reason for discharging his two appellate attorneys was their refusal to raise an ineffective assistance of trial counsel claim. The Michigan courts were not required to provide him with a third attorney because of that disagreement. *Jones v.* *Barnes*, 463 U.S. 745, 754, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983) (holding that a defendant has no constitutional right to have appellate counsel raise every nonfrivolous issue the defendant requests).