RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 26a0077p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

SCOT GAITHER,

                    *Petitioner-Appellant,*

     *v.*

TIM LANE, Warden,

                    *Respondent-Appellee.*

No. 24-5942

───────────────

Appeal from the United States District Court for the Western District of Kentucky at Owensboro.
No. 4:18-cv-00151—Joseph H. McKinley, Jr., District Judge.

Decided and Filed:  March 12, 2026

Before:  KETHLEDGE, BUSH, and NALBANDIAN, Circuit Judges.

───────────────

## COUNSEL

───────────────

**ON BRIEF:**  Timothy G. Arnold, DEPARTMENT OF PUBLIC ADVOCACY, Frankfort, Kentucky, for Appellant.  Matthew R. Krygiel, OFFICE OF THE SOLICITOR GENERAL, Frankfort, Kentucky, for Appellee.

───────────────

## OPINION

───────────────

NALBANDIAN, Circuit Judge.  In 2001, Scot Gaither kidnapped and killed his business partner.  A Kentucky jury convicted him of various crimes, and he received a life sentence.  Ever since, he has spent his time petitioning state and federal courts to nullify various aspects of his trial, sentencing, and appeals.  Most recently, Gaither filed an unsuccessful federal habeas petition.  Now, we review two of the rejected claims from that petition.  Gaither, who prosecuted his original state-court appeal pro se, says he actually didn't waive his right to counsel on direct

appeal.  He also claims that his trial counsel was constitutionally ineffective.  But he explicitly waived his right to appellate counsel, and he procedurally defaulted on the second claim, so we AFFIRM.

**I.**

**A.**

In the late summer of 2001, James Parson went missing.  His family contacted the police.  Then they started receiving ransom calls.  The police traced the calls to payphones in Owensboro, Kentucky, where they waited for the kidnapper to make another call.  Sure enough, the police watched a man make a ransom call from one of the payphones.  They arrested the man.  It was Scot Gaither, Parson's former co-owner in a dance club business venture gone south, and he had the keys to Parson's missing van.

Right away, Gaither started lying.  When officers arrested him, he said, "Thank God you found me, I have been kidnapped."  He fabricated names and physical descriptions for his five "abductors," explaining how he'd been blindfolded and driven around for two days.  And he led the police around the countryside, pointing out the places where he'd been held.

But the physical evidence told a different story.  On the morning that Parson went missing, gas station surveillance footage showed Parson driving his van with Gaither sitting shotgun.  And when Parson exited the van to get gas, he didn't display any sign of duress.  But a few hours later, Parson sounded strange when he answered a short phone call.  Sometime that afternoon, Gaither and Parson drove to a remote area of Kentucky.  Then a struggle ensued inside the van.  Ballistic evidence showed that Gaither shot Parson with a 9mm handgun, and Parson exited the van from the driver's side.  Gaither exited the van from the passenger's side.  He shot Parson in the back, leaving Parson's body.  Gaither then drove the van to Evansville, Indiana, where he abandoned it in a parking lot.  The police found Parson's blood in the van, Parson's blood on Gaither's belt, and 9mm ammunition in Gaither's gun collection.  And months later, they found Parson's decomposed body in a roadside ditch, with Gaither's cell phone lying nearby.

Kentucky charged Gaither with several crimes, including murder and kidnapping.  Two inmates testified that Gaither confessed about his initial plan to kidnap Parson for ransom, explaining that he'd shot Parson after the plan went sour.  *Gaither v. Commonwealth* (*Gaither II*), 2008 WL 4822233, at *1 (Ky. Ct. App. Nov. 7, 2008).  But Gaither changed his story, again.  He testified that Parson held him at gunpoint and drove to a rural area.  They struggled for the gun, causing it to discharge.  And Gaither added that he was mentally ill at the time.  In the end, the jury convicted Gaither of kidnapping, first-degree manslaughter (not murder), theft, and tampering with physical evidence.  And it recommended a sentence of life without parole.  The trial judge accepted the recommendation.

**B.**

That's when things got tricky.

**1.**

Gaither started with a direct appeal.  He says he asked his lawyer to appeal the judgment.  But the lawyer failed to file the appeal.  Then, Gaither says that a fellow inmate convinced him that lawyers are "no good" because they can't "relate to doing time."  *See* R.1-1, PageID 104.

So he filed a pro se motion for belated appeal with the Kentucky Supreme Court, stating that, although he wanted to appeal, he did "not want any appointment of counsel, as he unequivocally invokes his inalienable § 11 Kentucky Constitutional right to be heard by himself."[1]  He attached an Order and Affidavit of Indigency, affirming "I do not want appointment of counsel."  Kentucky encouraged Gaither to get a lawyer.  The Kentucky Supreme Court asked the Department of Public Advocacy—the state's public defender organization—to contact Gaither.  So an Appellate Branch manager sent Gaither a detailed letter explaining many "bad things that could happen if you choose to act as your own lawyer."  R.1-1, PageID 110.  The letter warned Gaither to not proceed pro se, and to not rely on inmate legal aides.  Still, Gaither decided to proceed without counsel.

---

[1]Section 11 of the Kentucky Constitution guarantees a criminal defendant the "right to be heard by himself."  Ky. Const. § 11.

The Kentucky Supreme Court remanded the matter, asking the trial court to hold an evidentiary hearing on whether Gaither could be personally blamed for the late notice of appeal. Court-appointed counsel, which Gaither agreed to, represented Gaither at that hearing. The trial court found that the trial counsel's failure to file the appeal wasn't attributable to Gaither, so the Kentucky Supreme Court granted his motion for leave to file a belated appeal.

Armed with this order, Gaither filed a pro se notice of belated appeal and a motion to proceed in forma pauperis, where he again emphasized that he did "<u>not</u> want any appointment of counsel." He filed a pro se brief that presented fifteen claims.

The Kentucky Supreme Court found no merit in any of Gaither's claims. *Gaither v. Commonwealth* (*Gaither I*), 2006 WL 436071, at *1–5 (Ky. Feb. 23, 2006). It affirmed both the trial court's judgment and its sentence. And it denied Gaither's petition for rehearing. Two years later, Gaither obtained a lawyer and moved for leave to file a second motion for belated appeal, arguing that he never validly waived his right to counsel on direct appeal. R.14-1, PageID 381. The Kentucky Supreme Court denied that motion. R.14-2, PageID 453.

**2.**

By the time Gaither tried to file his second belated appeal, he had already launched a state-court collateral attack on his conviction and sentence. In October 2006, Gaither moved pro se under a Kentucky Rule of Criminal Procedure that allows prisoners to move to "vacate, set aside or correct" their sentence if they "claim[] a right to be released." Ky. R. Crim. P. 11.42(1). In his motion, Gaither alleged twenty-five instances of ineffective assistance of trial counsel. The trial court dismissed seventeen of the claims, finding that they either didn't fit Rule 11.42 or should've been brought on direct appeal. So Gaither appealed that judgment—represented by appointed counsel. And the Kentucky Court of Appeals found that the trial court should've entertained three of the seventeen dismissed claims alleging ineffective assistance of counsel.

On remand, the trial court held an evidentiary hearing on the three remaining claims. The court rejected two of Gaither's claims, but it found merit in the third, related to trial counsel's failure to object to an improper sentencing instruction on the kidnapping conviction. So the

court granted Gaither a new sentencing hearing for the penalty phase of the kidnapping conviction.  On appeal, the Kentucky Court of Appeals affirmed.

But the new proceeding yielded a similar result—imprisonment for life, served concurrently with a twenty-year sentence for manslaughter.  Gaither appealed, and the Kentucky Supreme Court affirmed.

**3.**

Then, in September 2018, through counsel, Gaither launched more collateral attacks.  He filed both a federal habeas petition and another Rule 11.42 motion.  In the latter, he tried to raise several ineffective-assistance-of-trial-counsel claims related to his 2004 trial and conviction.  But Rule 11.42 generally requires petitioners to bring claims within three years of the judgment becoming final, so the trial court denied the motion as untimely and successive.  And the Kentucky Court of Appeals affirmed.  Finally, the Kentucky Supreme Court denied Gaither's motion for discretionary review.  During this process, a federal court held his federal habeas petition in abeyance.

**4.**

So Gaither returned to federal court, re-opening the federal habeas petition.  In 2022, the court granted leave to file an amended petition, which we now consider on appeal.  In it, he raised seven grounds for relief.

Two years later, acting on a magistrate judge's recommendation, the district court denied Gaither's habeas petition.  It found that Gaither procedurally defaulted on most of his claims by not bringing them earlier, and that he didn't qualify for any exception that could have excused the untimeliness.  On Gaither's claim that Kentucky shouldn't have allowed him to proceed pro se on direct appeal, the district court also explained why Gaither lost on the merits.  The court denied a certificate of appealability on all claims except that one.

Gaither asked this Court to expand the certificate of appealability to include his other six claims.  We granted his motion for one claim—ineffective assistance of trial counsel on the kidnapping and kidnapping exemption statutes.

**II.**

So we have two claims to review.  First, Gaither says Kentucky violated his rights to counsel and due process by allowing him to proceed pro se during his direct appeal.  And second, he says that his 2004 trial counsel was ineffective because his lawyer failed to prevent or correct two statements made in the prosecution's closing argument.

For both claims, our analysis starts with the statute.  *See* 28 U.S.C. § 2254.  Under it, we can't grant the petition unless the petitioner meets one of three requirements.  He must either have "exhausted the remedies available" to him in state courts, the state courts must lack a remedy, or the state's process must be ineffective to protect his rights.  *See id.* § 2254(b)(1).  Put differently, if a state has an adequate remedy, a prisoner must pursue that remedy before he brings the claim in a federal habeas petition.

But if a prisoner fails to properly exhaust his legitimate chances to make his claims in state court, he procedurally defaults on those claims and can't bring them in federal court.  The procedural default doctrine "protect[s] the state courts' role in the enforcement of federal law and prevent[s] disruption of state judicial proceedings."  *Coleman v. Thompson*, 501 U.S. 722, 731 (1991) (quoting *Rose v. Lundy*, 455 U.S. 509, 518 (1982)).  So if Gaither missed his once-open window to make his claims, the claims are defaulted.  *See Martinez v. Ryan*, 566 U.S. 1, 9 (2012).

Still, prisoners can overcome a procedural default in rare circumstances.  We can forgive a procedural default when a prisoner demonstrates "cause for the default" and "actual prejudice as a result of the alleged violation of federal law."  *Coleman*, 501 U.S. at 750.  The state can also waive these requirements, because "exhaustion and procedural default are not jurisdictional limitations."  *Pudelski v. Wilson*, 576 F.3d 595, 606 (6th Cir. 2009).

Another part of the habeas statute cabins our review of the facts.  Section 2254(e)(1) explains that "a determination of a factual issue made by a State court shall be presumed to be correct" and that Gaither "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  And the next subsection prohibits us from holding an evidentiary hearing unless Gaither shows that his claim relies on a "new rule of

constitutional law, made retroactive," or "a factual predicate that could not have been previously discovered through the exercise of due diligence." *Id.* § 2254(e)(2).

With that framework in mind, we review Gaither's two claims. For each claim, we ask whether Gaither has any remaining opportunities to bring the claim in state court. If he does, he fails the statutory exhaustion requirement. *See id.* § 2254(b)(1)(A). And if he fumbled any once-open opportunity because he failed to comply with Kentucky's procedural rules, he has procedurally defaulted on the claim. In that event, we discern whether the claim qualifies for a narrow exception to procedural default, asking whether Gaither proved cause and prejudice. *See Coleman*, 501 U.S. at 750.

**A.**

In Gaither's first claim, he says Kentucky violated his Sixth Amendment right to effective assistance of counsel on appeal by allowing him to proceed pro se. And he says the district court erred by finding that he (1) procedurally defaulted on the claim and (2) loses on the merits. The state has never fully explored the first point (indeed, it didn't raise the argument below), and although we could still address the issue, *see Sowell v. Bradshaw*, 372 F.3d 821, 830 (6th Cir. 2004), we decline to do so.

So let's assume that Gaither didn't procedurally default on his claim. Gaither loses on the merits anyway. On the merits, we review legal questions de novo. *United States v. Simmons*, 797 F.3d 409, 412 (6th Cir. 2015). And we review "questions of fact under the clearly-erroneous standard." *Id.* That means we'll use a clear error standard to review the district court's account of Gaither's conduct, and we'll use a de novo standard to review whether that conduct amounted to a valid waiver of his Sixth Amendment right to counsel on appeal. Although the habeas statute provides a different standard of review when a state court already decided a claim on the merits, *see* 28 U.S.C. § 2254(d), that standard wouldn't apply here because Kentucky's state courts never heard this claim.

On direct appeal, criminal defendants have a constitutional right to counsel. *Evitts v. Lucey*, 469 U.S. 387, 392 (1985). But when they want to waive that right, the Supreme Court hasn't "establish[ed] any specific procedure . . . for informing a criminal defendant of the

consequences of a waiver." *Beatty v. Caruso*, 64 F. App'x 945, 950 (6th Cir. 2003). In fact, waiver of appellate counsel is often "accomplished by written communications." *Id.* And it can even be accomplished by the defendant's conduct. *Id.* That said, when a defendant's "indigency and desire to appeal are manifest," we can't "infer[] from [a] defendant's failure specifically to request appointment of appellate counsel that he has knowingly and intelligently waived his right to the appointment of appellate counsel." *Swenson v. Bosler*, 386 U.S. 258, 260 (1967).

Sometimes, a competent defendant makes it clear that he doesn't want appellate counsel. In instances where competent defendants have asserted the right to represent themselves on direct appeal in multiple motions, we've rejected their habeas claims alleging denial of appellate counsel. *See James v. Campbell*, 2020 WL 9597495, at *2 (6th Cir. Sept. 17, 2020); *Beatty*, 64 F. App'x at 951. In *Beatty*, for example, we upheld a defendant's waiver when he expressed a "desire to waive appellate counsel" in filings that discharged his appellate attorney, even though Michigan didn't "explicitly apprise [him] of the dangers of proceeding pro se in his appeal." *Beatty*, 64 F. App'x at 951 (citation modified).

Here, we have an even stronger case for upholding waiver. In fact, Gaither didn't proceed pro se by default—it's what he wanted from the start of his appeal. Gaither "fervently and repeatedly asserted his right to represent himself" in his filings, which spanned several months. *James*, 2020 WL 9597495, at *2. In one filing, he told the court that he "unequivocally invoke[d] his inalienable § 11 Kentucky Constitutional right to be heard by himself," citing applicable caselaw and the Constitution, and emphasizing that "Mr. Gaither . . . does not want any appointment of counsel." R.1-1, PageID 106. In another, he affirmed "I do not want appointment of counsel." *Id.* at PageID 145. And in a third, he repeated that he "does not want any appointment of counsel." *Id.* at PageID 117.

Gaither didn't even change his mind after Kentucky made him "aware of the dangers and disadvantages of self-representation." *Martinez v. Ct. of Appeal of California, Fourth App. Dist.*, 528 U.S. 152, 162 (2000). The state got the Department of Public Advocacy involved, which encouraged him to get a lawyer in a detailed letter that explained the many dangers of pro se appeals. R.1-1, PageID 110–11. The letter also explained the stakes: "life in prison without parole." *Id.* at PageID 110.

In all, this isn't close. It's difficult to imagine how Gaither could've made it any clearer that he didn't want counsel on appeal. So the Kentucky courts didn't violate his constitutional rights when they gave him exactly what he wanted. And the district court didn't err when it found that Gaither's "waiver of counsel was knowing and intelligent." R.45, PageID 850.

**B.**

As for his other claim, Gaither's habeas petition contends that his trial counsel was ineffective "by failing to research the kidnapping exemption statute, secure an appropriate definition of 'restraint,' and object to the Commonwealth's mischaracterization of the law on restraint." D.15 at 11. On appeal, Gaither rolls these into one argument. He says that his trial counsel failed to "prevent or correct the misstatement of the law of restraint." Appellant Br. at 37. The trial court rejected this claim because Gaither couldn't excuse his failure to raise the claim in state court.

It's undisputed that Gaither procedurally defaulted on this claim. *See* Appellant Br. at 43; Appellee Br. at 48; D.15 at 11. To overcome a default, a prisoner must prove cause for the default and that actual prejudice resulted from it. *See Coleman*, 501 U.S. at 750. To prove cause, he must show that an "objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

Importantly, in narrow circumstances, ineffective assistance of post-conviction counsel can be an "objective factor" that excuses the default of a claim of ineffective assistance of trial counsel. *See Martinez v. Ryan*, 566 U.S. 1, 12 (2012). To take advantage of this narrow exception, the prisoner must show that (1) "the state either prohibits or makes it virtually impossible to raise ineffective-assistance-of-trial-counsel claims on direct appeal," (2) "the petitioner received ineffective assistance of counsel in the initial state post-conviction proceedings," and (3) "the petitioner has a substantial claim that counsel rendered ineffective assistance at trial." *Rogers v. Mays*, 69 F.4th 381, 395–96 (6th Cir. 2023) (en banc) (citation modified).

And, finally, to prove actual prejudice, he must show that "the outcome of the trial would have been different" without the error. *Jones v. Bell*, 801 F.3d 556, 563 (6th Cir. 2015) (citation

modified).  We review these questions de novo.  *Hodges v. Colson*, 727 F.3d 517, 529 (6th Cir. 2013).

For our purposes, the cause question comes down to whether Gaither's ineffective-assistance-of-trial-counsel claim is "substantial."  To win on an ineffective assistance claim, a defendant must show that his "counsel (1) provided deficient performance that (2) prejudiced the defense."  *Hodge v. Plappert*, 136 F.4th 648, 659 (6th Cir. 2025) (en banc) (citing *Strickland v. Washington*, 466 U.S. 668, 690 (1984)) (citation modified).

The substance of Gaither's claim centers on two statements made by the prosecutor during closing argument.  Gaither contends that the prosecutor's closing argument was inaccurate and misleading on "restraint" and that Gaither's attorney was ineffective in failing to do something about it.

Under Kentucky law, as part of the kidnapping charge, the prosecution had to prove that Parson was "restrained" by Gaither.  At trial, it told the jury that Gaither had held Parson at gunpoint, with a plan to hold him for ransom, and forced him to drive to a remote area.  That theory necessarily includes restraint.  But in his closing argument, the prosecutor highlighted that no one knew how long Gaither had restrained Parson, and, according to Gaither, he misrepresented the theory of restraint:

> They didn't find him for 60 days.  They don't know if he died Thursday.  Friday.  The murder instruction says 'on or about.'  That means, you know, you can maybe find him Thursday or Friday.  We don't know when he died.  We don't know.  We don't know how long he suffered.  We don't know how long Scot Gaither shot him in that ditch and shot him in the back and left him out there.  Is that restraint?  You bet it is.

R.26, Closing Argument, Disk 13 at 04:29:53–04:32:18; D.21 at 317.  He later added:

> [Parson] didn't have any business out there, he didn't have any reason to go out there, but he was out there.  It was [demonstrated] to you that there was a struggle in and outside that van.  He was restrained then.  He was restrained when he couldn't get out of that [ditch] with those bullets in his back.  You shouldn't have any problem with restraint.

R.26, Closing Argument, Disk 13 at 05:02:22–05:02:34; D.21 at 334.

Gaither isolates the final few words of each statement, arguing that the prosecution told a "restraint by bullet" story where Parson was only restrained as a result of being shot. And he says that Kentucky's kidnapping statute wouldn't apply to him if he only restrained Parson "immediately with and incidental to" killing him. *See* Ky. Rev. Stat. Ann. § 509.050. Conversely, the warden highlights the context surrounding the "brief and isolated" statements, explaining that they were "mentioned as a piece of a substantial series of circumstances to support the inference that Parson had been restrained for a significant period of time." Appellee Br. at 61–62. The warden also emphasizes the evidence against Gaither.

We agree with the lower courts that Gaither's claim isn't substantial because it "has no merit." *Moore v. Mitchell*, 708 F.3d 760, 778 (6th Cir. 2013). The warden's reading of the prosecution's closing argument is plainly correct. We "do not look at such statements in isolation—we look at them in context." *Id.* at 790. And everything in the record supports the warden's reading. Throughout the trial, the prosecution told a cohesive, conventional kidnapping story. The prosecution contended that Gaither held Parson at gunpoint and forced him to drive to a remote area. The jury heard ample evidence that corroborated that theory. It heard from two inmates who testified to Gaither's kidnapping confession. And Gaither's confession matched the other evidence: Parson sounding strange in the short phone call, Gaither's possession of ammunition that matched the weapon, his attempts to cover up the crime, his ransom calls, and more. His claim has no basis in fact.

Gaither's claim has no basis in law either. We "strongly presume[]" that defense counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. This "highly demanding" standard requires petitioners to prove "gross incompetence of their attorneys." *Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986). And our Circuit's caselaw demands even more. We've held that a "failure to object usually cannot be said to have been error unless the evidence sought is so prejudicial to a client that failure to object essentially defaults the case to the state." *Lundgren v. Mitchell*, 440 F.3d 754, 774 (6th Cir. 2006). When Gaither's lawyer decided not to "prevent" or object to the closing argument, that decision didn't "essentially default" Gaither's case. In context, the prosecutor's statements played a meaningless role in the outcome. Gaither falls far short of

overcoming our presumption that his lawyer's decision was "part of a trial strategy or tactical choice," so his claim lacks merit. *Id.*

Finally, his claim also fails a tougher task. To excuse his procedural default, Gaither needs to show prejudice, twice. First, *Rogers* requires him to show evidence of *Strickland* prejudice to demonstrate that he has a "substantial" claim for ineffective assistance of trial counsel, a claim that necessarily includes proving prejudice. *See Rogers*, 69 F.4th at 397; *Strickland*, 466 U.S. at 687. And second, he must satisfy *Coleman*'s "actual prejudice" prong. *Coleman*, 501 U.S. at 750. These two hurdles have different requirements. To fulfill the *Strickland* prejudice requirement, Gaither must provide evidence that there is a substantial likelihood that, "but for [the prosecutor's statements], the result of the proceeding would have been different." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011); *Strickland*, 466 U.S. at 694. And *Coleman*'s "actual prejudice" standard requires more—we "look to the record to determine if the outcome of the trial would have been different." *Jones v. Bell*, 801 F.3d 556, 563 (6th Cir. 2015) (citation modified).

But Gaither doesn't come close to passing either test. *See Lundgren*, 440 F.3d at 775. To make things easy, we can start and end with the higher hurdle, "actual prejudice" under *Coleman*. When the evidence against a defendant is "overwhelming," we've held that a lawyer's decision not to object to the admission of improper testimony or physical evidence doesn't "actually prejudice" the defendant. *Id.* This is one of those cases. The evidence against Gaither included a confession, a clear plan, a documented cover-up, and a dizzying list of testimony and physical evidence corroborating Gaither's guilt. And even if the prosecutor's closing argument confused any jurors about the definition of "restraint," the jury received an accurate definition in the jury instructions. *See* R.34 at PageID 725. In other words, "a trial without errors would still have resulted in conviction." *Jones*, 801 F.3d at 563 (citation modified). So Gaither can't show "actual prejudice."

Gaither's underlying claim lacks merit, so he can't show "cause" for his default. *See Coleman*, 501 U.S. at 750. And he can't show "actual prejudice" either. *See Jones*, 801 F.3d at 563. As a result, he cannot bring this claim in a federal habeas petition because he blew his once-available state court remedy.

**C.**

Last, Gaither asks us to remand for an evidentiary hearing if we "believe that further evidentiary development is necessary." Appellant Br. at 36. We don't. And even if we did, we couldn't remand for an evidentiary hearing.

When a habeas petitioner "has failed to develop the factual basis of a claim in State court proceedings," federal courts can only hold evidentiary hearings in extremely limited circumstances. *See* 28 U.S.C. § 2254(e)(2). Gaither doesn't argue that he qualifies for those limited circumstances. Instead, he says he never "failed" to develop the factual basis for his claim because the lack of factual development in state court wasn't his fault.

The Supreme Court rejected a nearly identical argument in *Shinn v. Ramirez*, 596 U.S. 366, 386–87 (2022). It held that § 2254(e)(2) prohibits evidentiary hearings even when an attorney's negligence prevented the proper development of the factual record. *Id.* at 371. This declined to extend *Martinez v. Ryan* as an exception to the requirements of § 2254(e)(2). So if Gaither failed to develop the record because he lacked an attorney, that doesn't change § 2254(e)(2)'s applicability. We decline to remand for an evidentiary hearing.

**III.**

Scot Gaither has challenged his conviction and sentence in dozens of different ways. But after 22 years, he's reached the end of the line. We AFFIRM the district court's dismissal of the habeas petition.